**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PRESIDIO HOLDINGS INC., PRESIDIO NETWORKED SOLUTIONS LLC, and PRESIDIO NETWORKED SOLUTIONS GROUP, LLC, | ) ) ) ) |
| Plaintiff, | ) Case No.: 1:24-cv-02912 ) |
| v. | ) Hon. Judge Edmond E. Chang ) |
| PEOPLE DRIVEN TECHNOLOGY, INC., PAUL BREHM, STEVEN KUNDERT, and ANGELA SPLINTER, | ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION AND IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................4

I.    ALL DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN ILLINOIS..........................................................................................................4

     A.    Brehm and Kundert are Subject to Personal Jurisdiction in Illinois.......................5

         1.    Brehm and Kundert's Suit-Related Contact with Illinois Satisfies the Purposeful Availment Requirement........................................................5

         2.    The Fiduciary Shield Doctrine Does Not Apply to Brehm and Kundert ...........................................................................................9

     B.    PDT is Subject to Personal Jurisdiction in Illinois ...............................................11

II.    PLAINTIFFS HAVE STATED PLAUSIBLE CLAIMS AGAINST ALL DEFENDANTS ................................................................................................12

     A.    Plaintiffs Have Sufficiently Pled a Claim for Misappropriation of Trade Secrets Against All Defendants .........................................................................12

     B.    Plaintiffs Have Sufficiently Pled a Claim for Breach of Contract against the Former Employees ...........................................................................................15

         1.    Illinois Law Applies to the Agreements. ...............................................15

         2.    The Agreements are enforceable contracts under Illinois law.................16

         3.    The Agreements will still be enforceable even if Wisconsin law is applied...................................................................................................17

         4.    The Agreements Apply to PNS' Information. ...........................................19

         5.    The Presidio Employee Handbook is An Enforceable Contract...............20

     C.    Plaintiffs Have Stated Claims for Tortious Interference........................................20

         1.    Plaintiffs' Tortious Interference Claims are Not Preempted By ITSA or WUTSA ...........................................................................................20

         2.    The Former Employees' Data Manipulation Constitutes "Conduct Directed at a Third Party" .......................................................................22

     D.    Presidio Has Sufficiently Pleaded Breach of Fiduciary Duty By Splinter ............23

III.    THE COURT SHOULD GRANT THE PRELIMINARY INJUNCTION .......................23

     A.    Plaintiffs are Likely to Succeed on the Merits of their Claims.............................24

         1.    Trade Secrets.........................................................................................25

         2.    Breach of Contract ................................................................................33

         3.    Tortious Interference.............................................................................33

B.      Plaintiffs Have Demonstrated Irreparable Harm ....................................................33

C.      The Balance of Harms and the Public Interest Favors Plaintiffs ..........................35

CONCLUSION ...............................................................................................................................36

## TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Abbott Labs., Inc. v. BioValve Techs., Inc.*
    543 F. Supp. 2d 913 (N.D. Ill. 2008) ........................................................................6

*Allied Waste Servs. Of N. Am., LLC v. Tibble*
    177 F. Supp. 3d 1103 (N.D. Ill. 2016) .....................................................................26

*Amakua Dev. LLC v. Warner*
    411 F. Supp. 2d 941 (N.D. Ill. 2006) ......................................................................16

*Aon PLC v. Alliant Ins. Servs., Inc.*
    No. 23-cv-03044, 2023 WL 3914886 (N.D. Ill. June 9, 2023).................................32

*Aon Risk Servs. Cos., Inc. v. Alliant Insurance Servs., Inc.*
    415 F. Supp. 3d 843 (N.D. Ill. 2019) .........................................................24, 30, 34

*Aon Risk Servs., Inc v. Liebenstein*
    710 N.W.2d 175 (Ct. App. Wis. 2005)................................................................18, 34

*APC Filtration, Inc. v. Becker*
    646 F. Supp. 2d 1000 (N.D. Ill. 2009) ....................................................................25

*Brujis v. Shaw*
    876 F. Supp. 975 (N.D. Ill. 1995) ...........................................................................10

*Burbank Grease Servs., LLC v. Sokolowski*
    717 N.W.2d 781 (Wis. 2006).....................................................................................22

*Chemetall GMBH v. Zr Energy, Inc.*
    No. 99 C 4334, 2000 WL 1808568 (N.D. Ill. Dec. 6, 2000) ...................................19

*Clark Products v. Rymal*
    No. 02 C 6893, 2002 WL 31572569 (N.D. Ill. Nov. 19, 2002)................................10

*Clay v. Horton Mfg. Co. Inc.*
    493 N.W.2d 379 (Ct. App. Wis. 1992) ....................................................................20

*Cook ex rel. Career Educ. Corp. v. McCullough*
    No. 11-cv-9119, 2012 WL 3488442 (N.D. Ill. Aug. 13, 2012) ...............................23

*Cranes LLC v. Sany Am., Inc.*
    Case No. 13-C-677, 2017 U.S. Dist. LEXIS 236633 (E.D. Wis. 2017)..................21

*Curry v. Revolution Labs., LLC*
    949 F.3d 385 (7th Cir. 2020) .....................................................................................6

*CZS Holdings LLC v. Kolbe*
No. 20 C 6886, 2021 WL 1837385 (N.D. Ill. May 7, 2021) ...................................32

*D.U. v. Rhoades*
825 F.3d 331 (7th Cir. 2016) ....................................................................................24

*Diamond Assets LLC v. Godina,*
979 N.W.2d 586 (Wis. Ct. App. 2022.) ...................................................................18

*Do It Best Corp. v. Passport Software, Inc.*
No. 01 C 7674, 2004 U.S. Dist. LEXIS 14174 (N.D. Ill. July 23, 2004) ...............20

*Edelson PC v. Girardi*
No. 20 C 7115, 2021 WL3033616 (N.D. Ill. Jul. 19, 2021) .......................................6

*Fisher/Unitech, Inc. v. Computer Aided Tech., Inc.*
2013 WL 1446425 (N.D. Ill. Apr. 9, 2013) ..............................................................16

*Fletcher v. Doig*
125 F. Supp. 3d 697 (N.D. Ill. 2014) .......................................................................10

*Forge Indus. Staffing Inc. v. De La Fuente*
No. 06 C 3848, 2006 WL 2982139 (N.D. Ill. Oct. 16, 2006) ..................................20

*Gilman Opco LLC v. Lanman*
No. 13-cv-7846, 2014 WL 1284499 (N.D. Ill. Mar. 28, 2014) ...............................12

*Groupon, Inc. v. Shin*
No. 21 C 60829, 2022 WL 60526 (N.D. Ill. Jan 9, 2022.) ......................................15

*Henderson v. U.S. Bank, N.A.*
615 F. Supp. 2d 804 (E.D. Wis. 2009)......................................................................17

*Hexacomb Corp. v. GTW Enter., Inc.*
875 F. Supp. 457 (N.D. Ill. 1993) ............................................................................19

*IDX Sys. Corp. v. Epic Sys. Corp.,*
285 F.3d 581 (7th Cir. 2002) ....................................................................................21

*Inventus Power, Inc. v. Shenzhen Ace Battery Co., Ltd.*
Case No. 20-cv-3375, 2020 WL 3960451 (N.D. Ill. July 13, 2020)..................31, 32

*Kohler Co. v. Truenorth Collective LLC*
Case No. 21-CV-1307, 2022 WL 860624 (E.D. Wis. Mar. 23, 2022) ..............17, 18

*Lucero v. Credit Union Ret. Plan Ass'n*
No. 22-cv-208-JDP, 2023 WL 2424787 (W.D. Wis. Mar. 9, 2023).........................23

*McElroy, Inc. v. Delaney*
   389 N.E.2d 1300 (Ill. App. Ct. 1979) .......................................................................17

*MG Design Assocs., Corp. v. CoStar Realty Info. Inc.*
   267 F. Supp.3d 1000, 1018-1019 (N.D. Ill. 2017) ..................................................11

*Mickey's Linen v. Fischer*
   No. 17 C 21549, 2017 WL 3970593 (N.D. Ill. Sept. 8, 2017)..................13, 15, 25, 28, 30, 31

*Millard Maint. Serv. Co. v. Bernero*
   566 N.E.2d 379 (Ill. App. Ct. 1990) .......................................................................16

*Minemyer v. R-Boc Representatives, Inc.*
   No. 07 C 1763, 2007 WL 2461666 (N.D. Ill. Aug. 24, 2007)............................9, 10

*Mission Measurement Corp. v. Blackbaud, Inc.*
   No. 16 C 6003, 2018 U.S. Dist. LEXIS 48809 (N.D. Ill. Mar. 26, 2018) .............20

*Moss Holding Co. v. Fuller*
   Case No. 20-cv-01043, 2020 WL 1081730 (N.D. Ill. Mar. 6, 2020) .....................34

*Nat'l Tech., Inc. v. RepCentric Solutions*
   No. 13 C 1819, 2013 U.S. Dist. LEXIS 98881 (N.D. Ill. July 16, 2013) .................6

*Optimas OE Solutions, LLC v. Grimes*
   No. 20 C 2519, 2020 WL 4365917 (N.D. Ill. Jul. 30, 2020) ..........................8, 9, 11

*Opus Fund Servs. (USA) LLC v. Theorem Fund Servs. LLC*
   No. 17-C-923, 2017 U.S. Dist. LEXIS 160649, 2017 WL 4340123 (N.D. Ill. Sept. 2
   2017) .......................................................................................................................22

*Outsource Int'l. Inc. v. George Barton*
   192 F.3d 662 (7th Cir. 1999) .................................................................................26

*People Driven Tech., Inc. et al. v. Presidio, Inc. et al.*
   No. 4:22-cv-10098-SDK-KGA, ECF 134 (E.D. Mich. Mar. 20, 2023) ...........19, 26

*Polyone Corp. v. Lu*
   No. 14 CV 10369, 2018 U.S. Dist. LEXIS 167482 (N.D. Ill. Sep. 28, 2018)........21

*Potomac Leasing Co. v. Chuck's Pub, Inc.*
   509 N.E.2d 751 (Ill. App. Ct. 1987) .......................................................................16

*Presidio, Inc., et al. v. Leonard et al.*
   No. 2019-0298-JRS (Del. Ch. May 1, 2019) .........................................................36

*Presidio, Inc., et al. v. Pant*
   No. 2023-0918-NAC (Del Ch. Oct. 6, 2023)...........................................................36

*Presidio, Inc. et al. v. Theys et al.*
  No. 2020-0840-PAF, 2020 WL 5946394 (Del. Ch. Oct. 5, 2020)..........................................36

*Presidio, Inc. v. People Driven Technology, Inc.*
  686 F. Supp.3d 652 (S.D. Ohio 2023) ..............................................................................19, 26

*Rice v. Nova Biomedical Corp.*
  38 F.3d 909 (7th Cir. 1994) ....................................................................................................10

*Saban v. Caremark RX, LLC*
  780 F. Supp. 2d 700 (N.D. Ill. 2011) ......................................................................................33

*Share Corp. v. Momar Inc.*,
  No. 10-CV-109, 2011 WL 284273 (E.D. Wis. Jan. 26, 2011) ................................................18

*Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*
  Case NO. 17 C 8816, 2018 WL 636769 (Jan. 31, 2018) ........................................................27

*SKF USA, Inc. v. Bjerkness*
  636 F. Supp. 2d 696 (N.D. Ill. 2009) ......................................................................................26

*Star Direct, Inc. v. Dal Pra*
  319 Wis. 2d 274 (Wis. 2009) ...................................................................................................18

*Star Direct, Inc. v. Dal Pra*
  767 N.W.2d 898 (Wis. 2009) ...................................................................................................18

*Techworks, LLC v. Wille*
  770 N.W.2d 727 (Wis. Ct. App. 2009) ....................................................................................17

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*
  136 F. Supp. 3d 968 (N.D. Ill. 2015) ......................................................................................12

*Torco Oil Co. v. Innovative Thermal Corp.*
  730 F. Supp. 126 (N.D. Ill. 1989) .............................................................................................6

*Treppel v. Biovail Corp.*
  249 F.R.D. 111 (S.D.N.Y. 2008) .......................................................................................13, 14

*U.S. v. Dental Care Associates of Spokane Valley*
  No. 2:15-CV-23-RMP, 2015 WL 7430022 (E.D. Wash. Nov. 20, 2015) ...............................24

*Vendavo, Inc. v. Long*
  397 F. Supp. 3d 1115 (N.D. Ill. 2019) ....................................................................................25

*W. Capra Consulting Grp. v. Snyder*
  No. 1:19 C 4188, 2019 U.S. Dist. LEXIS 140692 (N.D. Ill. Aug. 20, 2019)...................4, 5, 6

*Westrock Co., LP v. Dillon*
    Case No. 21-CV-05388, 2021 WL 6064038 (N.D. Ill. Dec. 22, 2021) ...................................32

<u>Statutes</u>

Wis. Stat. § 103.465 ........................................................................................................................18

<u>Other Authorities</u>

11A Charles Alan Wright et al.,
    Federal Practice and Procedure Civil § 2949 (2d ed.) ............................................................23

Rule 12(b)(6) .................................................................................................................................23

Plaintiffs submit this reply in further support of their motion for preliminary injunction (ECF No. 27) (the "Motion" or "Mot.")[1] and in response to Defendants' combined memorandum in opposition to the Motion and in support of their motions to dismiss for lack of personal jurisdiction and failure to state a claim (ECF 70) (the "Opposition" or "Opp.").

## INTRODUCTION

The Opposition is most notable for what it does not contest. In the Motion opening papers, Plaintiffs marshaled significant forensic evidence of the Individual Defendants' wrongdoing, including evidence of mass access and deletion of files—as well as manipulation of records of pending customer opportunities—in their final days at Presidio. Defendants, however, provide *no rebuttal evidence*: There is not a single declaration from a forensic expert, or even a forensic report. Notably, the Individual Defendants' declarations ignore the bulk of the evidence as well, wishing away the fact that PDT and the Former Employees have been caught. Even the meager attorney argument offered in response fails to explain the forensic evidence and suspicious activity. Critically, then, Defendants do not deny the activity that underlies Plaintiffs' preliminary injunction motion and points to their prior and ongoing misappropriation. (*See infra* Point III.)

Presidio's significant evidence of misappropriation and irreparable harm is unrebutted and highlights the need for preliminary injunctive relief. Based on the forensic review of the Former Employees' Presidio-issued laptops and their Presidio emails, there is overwhelming evidence that the Former Employees have misappropriated Presidio's trade secrets, confidential data, and business opportunities to work in concert with PDT to divert Presidio's assets to PDT in violation of their statutory, contractual, and common law duties. This evidence includes the following:

---

[1] Unless otherwise noted, capitalized terms used herein have the meanings ascribed to them in the Motion and all emphasis is added.

- Kundert deleted 1,400 files from his Presidio laptop on March 13, 2024, just two days before his last day at Presidio. (Barnett Decl., ECF No. 29 ("4/24 Barnett Decl.") ¶ 7 & Ex. B.) The very next day, he visited "ClearBrowserData" in order to cover his tracks by deleting his web browsing history. (*Id*. ¶ 10.) Kundert's Presidio laptop did not contain any web-browsing history. (*Id*. ¶¶ 10, 11.) Kundert also deleted close to 1,600 Presidio mail items during his last two days at Presidio. (*Id*. ¶ 14.)

- Brehm deleted more than 5,000 Presidio mail items from his Presidio email account during his last two days at Presidio. (4/24 Barnett Decl. ¶ 15.)

- Kundert attempted to implement a change to Presidio's crucial registration and contact information for Pure Storage business from Presidio to his personal email address just three days prior to his last day at Presidio. (Dykhoff Decl., ECF No. 34 ("4/24 Dykhoff Decl.") ¶ 26.) This was in connection with Kundert's attempt to steal Presidio's customer ███████████████ by using Presidio's confidential deal registration information with Pure Storage. Kundert worked with Pure Storage representatives in Illinois in order to divert various opportunities from Presidio to PDT. Indeed, immediately after Kundert joined PDT, the Illinois representatives reached out to Kundert to "sync up quickly on ████" in furtherance of their scheme to steal the customer from Presidio. (*Id*. at ¶ 25.) They have been successful due to Kundert's coordinated efforts with the Pure Storage representatives located in Illinois, as well as his intentional conduct of delaying multiple opportunities related to ██████████ on Presidio's SalesForce system. (*Id*. at ¶ 22.) Kundert also deleted thousands of files related to ██████████ during his last few days at Presidio in an attempt to cover his tracks. (4/24 Barnett Decl. ¶ 7 & Ex. B.)

- Kundert intentionally delayed the SmartNet Renewal opportunity for █████████ ████, which is now a PDT customer. (4/24 Dykhoff Decl. ¶ 27.) ████ was a Presidio customer and has now converted to PDT in Illinois and Wisconsin as part of the plan implemented by Kundert and PDT. (*Id*.) Kundert intentionally deleted many ████ documents on the eve of his departure from Presidio. (4/24 Barnett Decl., Exhibit B.)

- Brehm forwarded a PowerPoint entitled "██████████ – PRISM Analysis August.pdf" to his presidio email address just eight days prior to his last day at Presidio. (4/24 Barnett Decl. ¶ 16.) The undisputed evidence is that this type of activity is suspicious from a forensic standpoint. Brehm simply ignores this and does not respond to the expert testimony (despite submitting a declaration on other topics). That powerpoint contained Presidio's confidential and proprietary information, listing the specific services and benefits Presidio offered through PRISM and the pricing for each service and benefit. (4/24 Dykhoff Decl. ¶ 14.) Brehm was not working on any PRISM opportunities on behalf of Presidio. (*Id*.)

- Brehm misappropriated a spreadsheet, which contained Presidio's margin and pricing information related to ████████████████████ ("████") (4/24 Dykhoff Decl. ¶ 15.) Brehm also deleted emails related to ████. (*Id*. ¶ 16.)

Brehm worked with Illinois representatives at Cisco in order to service ███. (Dykhoff Decl., ECF 55 ("5/24 Dykhoff Decl.") ¶ 7.) Immediately after joining PDT, Brehm, armed with Presidio's confidential pricing and other data, convinced ███ to move all of its networking business with Cisco to PDT. (4/24 Dykhoff Decl. ¶ 11.)

- Brehm worked closely with Jeffrey S. Mahan, a Supervisor of Network Engineering at ███ located in Rockford Illinois. (5/24 Dykhoff Decl. ¶ 5.) Brehm deleted emails related to ███ during his last few days at Presidio to further cover up his efforts to move business to PDT. (4/24 Barnett Decl. ¶ 15, Ex. D.)

- Splinter, based in Illinois, worked closely with Brehm and Kundert in order to service their customers, such as ███, ███, ███, ███, and ███. Splinter, as the Inside Client Manager, processed all quotes and invoices for Brehm and Kundert's customers, while she was located in Illinois. (4/24 Dykhoff Decl. ¶ 7.) After being instructed not to delete any Presidio files, on the last day of her employment at Presidio, Splinter intentionally double-deleted over 7,100 Presidio files from her Presidio laptop so that the files cannot be recoverable by any user. (6/24 Scatton Decl. ¶¶ 5, 6.) These files include files related to Presidio's customers ███, ███, ███, ███ and ███. (4/24 Scatton Decl. ¶ 9, Ex. B.)

These preliminary forensic findings constitute overwhelming evidence of a coordinated plan by the four Defendants to obtain Presidio's information, steal its business, and avoid Presidio's detection. Defendants have failed to provide any rebuttal forensic evidence or to respond to any of Presidio's substantive allegations of misconduct. The only response that Defendants offer, which does not dispute the misconduct, is that the deleted files can be recovered by Presidio from the recycle bin. This is wrong because most of the deleted data files were "***double deleted***," and no longer recoverable. Together, Brehm, Kundert and Splinter purposefully and intentionally deleted over 10,000 files and documents, directly related to the customers and partners that they are pursuing for PDT. Their intention was to leave no trace of their corporate espionage and to a large degree, they have been successful. Without an injunction, this misconduct will continue. Indeed, Defendants have not disputed the multiple opportunities that they have already diverted from Presidio for the benefit of PDT. (*See infra* Point III.)

Defendants' own motions fare no better, and certainly do not undermine the likelihood of success of Plaintiffs' claims on the Motion. This Court has personal jurisdiction over all Defendants because Defendants have had significant contacts with both *partners* and *customers* in Illinois and continue to cause harm in Illinois; Defendants' declarations and personal jurisdiction arguments carefully sidestep these facts but do not seriously contend otherwise. As an initial matter, Brehm, Kundert, and PDT are subject to personal jurisdiction in this Court because of their sustained contact with the state of Illinois. Defendants' jurisdictional arguments based on the 'minimum contacts' test here do not pass muster. At a minimum, jurisdictional discovery can and should occur concurrently with the expedited discovery that Plaintiffs are also presently seeking.

Without injunctive relief, Defendants will continue to improperly use and disclose Presidio's trade secrets and confidential information with impunity. Accordingly, Presidio respectfully requests that the Court issue a preliminary injunction requiring the return and safeguarding of Presidio's confidential and trade secret information and an independent forensic review of Defendants' devices and accounts.

## ARGUMENT

## I. ALL DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION IN ILLINOIS

Presidio has clearly satisfied its burden at this stage to make a *prima facie* showing that this Court has personal jurisdiction over PDT, Brehm, and Kundert. *See W. Capra Consulting Grp. v. Snyder*, No. 1:19 C 4188, 2019 U.S. Dist. LEXIS 140692, at *2 (N.D. Ill. Aug. 20, 2019) ("In deciding [a] motion to dismiss for lack of personal jurisdiction, which is based on the parties' submission of written materials without holding an evidentiary hearing, the plaintiff must make a prima facie case of personal jurisdiction").

As detailed below, all Defendants are subject to personal jurisdiction in Illinois because of their intentional and sustained contact with the State in connection with the events underlying this action. Defendants were all part of a coordinated scheme to steal Presidio customers in both Wisconsin and Illinois by misappropriating Presidio's confidential information and trade secrets. Defendants used their contacts in Illinois and directed activities to Illinois as part of this scheme. Furthermore, to the extent that there are any factual disputes pertaining to the foregoing, the court must "resolve [them] in the plaintiff's favor" at this stage. *Id.*

**A.**     **Brehm and Kundert are Subject to Personal Jurisdiction in Illinois**

        1.     Brehm and Kundert's Suit-Related Contact with Illinois Satisfies the Purposeful Availment Requirement

Contrary to Defendants' argument that "[n]one of Plaintiffs' allegations against Mr. Brehm nor Mr. Kundert relates to any of their contacts with Illinois" (Opp. 13), the Complaint specifically alleges that this action arises out of business transacted in the state of Illinois, including tortious acts committed in Illinois (*see, e.g.*, Compl. ¶¶ 19-22, 240-243). Indeed, Presidio has offered ample evidence to refute Defendants' claim that "neither Mr. Brehm nor Mr. Kundert have purposefully directed their activities toward Illinois or purposely availed themselves of transacting business in Illinois." (Opp. 12.) Specifically, Brehm and Kundert:

    i.   served Illinois-based customers or used Illinois-based resources to serve customers while at Presidio and now engage in the same activity at PDT (*see, e.g.*, Compl. ¶¶ 14, 16, 19, 20, 22, 162; 5/24 Dykhoff Decl. ¶¶ 4, 5, 6, 7);

    ii.   have diverted business in Illinois and with connections to Illinois, including Presidio customers in Illinois like ███, who are now with PDT due to Brehm's and Kundert's unlawful misconduct (*see* Compl. ¶¶ 73-75, 78, 113-124; 4/24 Scatton Decl. ¶ 9; 4/24 Barnett Decl. ¶ 15; 4/24 Dykhoff Decl. ¶ 27; 5/24 Dykhoff Decl. ¶¶ 14-15);

    iii.   have a documented history of contacts with Illinois that are directly related to the Presidio partners and customers at issue in the case (*see, e.g.*, 4/24 Dykhoff Decl. ¶¶ 9-11, 26; 5/24 Dykhoff Decl. ¶¶ 6, 13);

iv. worked with Splinter, an Illinois employee, who was the fulcrum of their business, to ship equipment to customer facilities in Illinois (5/24 Dykhoff Decl. ¶ 5); and

v. misappropriated Presidio's trade secrets related to Presidio customers and partners in Illinois (*see, e.g.*, 5/24 Dykhoff Decl. ¶¶ 4-5; 4/24 Barnett Decl. ¶ 15 & Exhibit D).

These facts demonstrate that there is a strong relationship between Defendants, Illinois, and the claims presented. *See Curry v. Revolution Labs., LLC*, 949 F.3d 385, 401 (7th Cir. 2020) (finding jurisdiction was proper over defendant when plaintiff showed that the sales defendant made in Illinois involved the product at issue); *see also Edelson PC v. Girardi*, No. 20 C 7115, 2021 WL3033616, at *9 (N.D. Ill. Jul. 19, 2021) (the "essential foundation for specific jurisdiction [is] a strong relationship between [defendant], Illinois, and the claims presented").

The fact that Brehm and Kundert are not residents of Illinois is not dispositive: the evidence demonstrates that they coordinated "via many phone calls and emails to . . . personnel in Illinois" and even made visits to Illinois to serve the Presidio customers at issue. *Nat'l Tech., Inc. v. RepCentric Solutions*, No. 13 C 1819, 2013 U.S. Dist. LEXIS 98881, at *10-11 (N.D. Ill. July 16, 2013). The Court is expressly permitted to consider these kinds of communications when analyzing a defendant's contact with the forum state. *See Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 921 (N.D. Ill. 2008) ("Seventh Circuit and Supreme Court precedent . . . enabl[e] the court to consider telephone and e-mail communications when viewing a defendants contact with the forum state 'collectively'") (internal quotations omitted); *Torco Oil Co. v. Innovative Thermal Corp.*, 730 F. Supp. 126, 134 (N.D. Ill. 1989) ("voluntary travel to Illinois to transact business is considered an activity that invokes the benefits and protections of Illinois law") (internal citations and quotation marks omitted).

Brehm and Kundert's "sustained contact over the course of several months . . . is not random, fortuitous, or attenuated." *W. Capra Consulting Grp.*, 2019 U.S. Dist. LEXIS 140692, at

*16 (internal citations omitted) (finding individual defendant was subject to personal jurisdiction in Illinois based on his "more than 80 phone calls and hundreds of emails with . . . employees in Illinois" and his participation in "Illinois-led meetings by phone").  For example, Kundert worked closely with many Illinois-based Cisco and Juniper representatives on opportunities for Presidio customer ██████████—a customer PDT has since stolen from Presidio.  (Declaration of Shin Hahn ("Hahn Decl."), Ex. B.)  Cisco and Juniper are Original Equipment Manufactures (OEMs) and are crucial to the sales initiatives for the customers.  (4/24 Dykhoff Decl. ¶ 4.)  The OEMs then play a central role in the implementation and ongoing customer relationships.  Kundert also worked closely with Demetri Diakakis, an Illinois-based representative for Pure Storage, another critical OEM, to divert a pending business expansion opportunity for Presidio customer ██████████ to PDT.  (4/24 Dykhoff Decl. ¶ 26; 5/24 Dykhoff Decl. ¶ 13.)  Indeed, this is the same Presidio partner for which Kundert intentionally and improperly changed the deal registration notifications from his Presidio email address to his personal gmail address so that he could continue receiving Presidio's confidential and proprietary information related to ██████████ after his departure from Presidio.  (4/24 Dykhoff Decl. ¶ 26.)  Presidio has since learned that the Chicago-based Pure Storage team met with Kundert since he has joined PDT.  (4/24 Dykhoff Decl. ¶ 25.)

Brehm, for his part, routinely worked with Illinois-based Cisco employees on opportunities for Presidio customer ██████ (Hahn Decl. Ex. C.)  In particular, Brehm worked closely with Chicago-based Cisco employee, Ryan DeFranco, on various projects and opportunities for ██████. (5/24 Dykhoff Decl. ¶ 7.)  Although Brehm purports not to remember who DeFranco is, documentary evidence shows that he corresponded with DeFranco in connection with Presidio's work for ██████. (Hahn Decl. Ex. C.)  Since Brehm joined PDT, ██████ has notified Presidio that all its work with Cisco will now be with PDT.  (4/24 Dykhoff Decl. ¶¶ 9-11.)  Brehm has also

worked closely with Splinter, an Illinois-based employee, to deliver equipment to customer facilities in Illinois. Specifically, Brehm and Splinter worked with ████, an Illinois-based customer who is at issue in the instant case, to deliver equipment to ████ facilities in Rockford, Illinois. (5/24 Dykhoff Decl. ¶ 5.) Brehm and Splinter also worked together to ship equipment to ████ facilities in Buffalo Grove, Illinois. (5/24 Dykhoff Decl. ¶ 6.)

Brehm and Kundert's misappropriation of Presidio's Illinois-related trade secrets further demonstrates that Presidio's "alleged injur[ies] arise[] out of [Defendants'] forum-related activities." *Optimas OE Solutions, LLC v. Grimes*, No. 20 C 2519, 2020 WL 4365917, at *8 (N.D. Ill. Jul. 30, 2020) (finding jurisdiction was proper over individual defendants who "allegedly misappropriated trade secret information from [plaintiff's] servers in Illinois"). Brehm, Splinter and PDT have now stolen most of the Cisco networking opportunities for ████—a major Presidio account that Brehm worked with Chicago-based Cisco representatives to serve. (4/24 Dykhoff Decl. ¶ 10.) Furthermore, Presidio's forensic investigation has uncovered evidence that Brehm and Kundert misappropriated confidential and proprietary information related to ████, ████, ████, and ████—all of whom are Presidio customers in Illinois. (*See* 4/24 Barnett Decl. ¶¶ 7, 15.) Not only has Presidio already lost ████ business (*see* 4/24 Dykhoff Decl. ¶ 27), Presidio has also learned that PDT, Brehm, and Kundert have been meeting with these customers in a further attempt to steal their business from Presidio. (Compl. ¶¶ 78, 123.)

Presidio's investigation has further revealed the Kundert and Brehm intentionally sabotaged and delayed important Presidio opportunities related to customers and partners in Illinois in SalesForce immediately prior to his departure. (4/24 Dykhoff Decl. ¶¶ 22-27.) To provide one significant example, Kundert delayed the storage expansion opportunity for ████ while at Presidio and successfully diverted that opportunity by working in concert

with Pure Storage representatives in Illinois. (*Id.* ¶¶ 25-26.) Presidio also lost the VMWare ELA opportunity for ███████████ due to Kundert's intentional manipulation the SalesForce data. (*Id.* ¶ 24.) Kundert then deleted a massive amount of data to in a blatant coverup and attempt to stall Presidio's efforts to compete fairly. These included documents related to ███████████ in Illinois that Kundert deleted prior to his departure from Presidio. (*See* 4/24 Barnett Decl. ¶ 7.)

Accordingly, Defendants' "suit-related contacts with Illinois [here] . . . more than suffice to make fair and just the exercise of jurisdiction over them." *Optimas OE Solutions*, 2020 WL 4365917, at *9. Plaintiffs have clearly demonstrated that Presidio's injuries were the result of Defendants' activities in Illinois and that Brehm and Kundert's misconduct can be directly linked to their contacts with Illinois. Defendants fail to present a compelling case that the presence of some other consideration would render jurisdiction unreasonable.

### 2. The Fiduciary Shield Doctrine Does Not Apply to Brehm and Kundert

Defendants further argue that Kundert and Brehm cannot be subject to personal jurisdiction in Illinois due to the fiduciary shield doctrine, but mischaracterize the personal jurisdiction inquiry as focused only on Defendants' legitimate business activity on behalf of Presidio. (Opp. 15.) As an initial matter, the issue of whether Kundert and Brehm's activities in Illinois were undertaken solely on behalf of Presidio is a fact-based inquiry which should not be resolved prior to discovery; at this preliminary stage, issues of fact must be resolved in Plaintiffs' favor. *See Minemyer v. R-Boc Representatives, Inc.*, No. 07 C 1763, 2007 WL 2461666, at *4 (N.D. Ill. Aug. 24, 2007).

Moreover, the fiduciary shield doctrine has no relevance in this case, which focuses on the Individual Defendants' misappropriation and disloyalty against their former employer, Presidio. If the employee's or agent's conduct in Illinois is also motivated by his own personal interests, then he is subject to personal jurisdiction in Illinois and the fiduciary shield doctrine does not apply. *See id.* at *3 ("the fiduciary shield doctrine is inapplicable if the employee's tortious acts

-9-

in Illinois were intended to serve his personal interests"); *Brujis v. Shaw*, 876 F. Supp. 975, 978 (N.D. Ill. 1995).

The claims in this case arise out of the Former Employees' own tortious acts to improperly delay opportunities relating to Presidio's Illinois-based customers and partners to move them to PDT and misappropriate Presidio's confidential information for PDT's benefit. Kundert and Brehm, for their own and PDT's interests, intentionally delayed and diverted many Presidio opportunities related to Illinois-based customers and partners. (*See, e.g.*, 4/24 Dykhoff Decl. ¶¶ 9-13, 22-27.) In *Clark Products v. Rymal*, the court found that the fiduciary shield doctrine did not protect individual defendant from suit in Illinois when she, in a manner similar to Kundert, "voluntarily chose" to remain silent regarding a potential business opportunity to advance her own personal interests in another company. No. 02 C 6893, 2002 WL 31572569, at *3-4 (N.D. Ill. Nov. 19, 2002). Likewise, in *Minemyer*, the Court found that the fiduciary shield doctrine did not apply when the employee "was driven to make decisions based upon his friendship with [a competitor employee]." 2007 WL 2461666, at * 5. As in *Clark* and *Minmyer*, Defendants here "ha[d] the power to decide what is to be done and choose[] to commit the acts that subject [them] to long-arm jurisdiction." *Clark*, 2002 WL 31572569, at *3; *Minemyer,* 2007 WL 2461666, at *3.[2]

---

[2] Defendants' reliance on *Rice v. Nova Biomedical Corp.*, 38 F.3d 909 (7th Cir. 1994) (which was decided after trial), and *Fletcher v. Doig*, 125 F. Supp. 3d 697 (N.D. Ill. 2014), is misplaced. Neither case involved employees using their discretion to engage in tortious activity in Illinois for their own benefit. *See Rice*, 38 F.3d at 914 (finding defendant "was not in fact in Illinois to serve his personal interests"); *Fletcher*, 125 F. Supp. 3d at 719 (defendant-attorneys did not travel to Illinois to "serve their personal interests, but *solely* on [their client's] behalf").

### B. PDT is Subject to Personal Jurisdiction in Illinois

Defendants argue that PDT has "not purposefully directed its activities to Illinois" and that none of Presidio's injuries "arise out of or relate to any of PDT's limited connections with Illinois." (Opp. 10-11.) This is wrong. PDT is subject to jurisdiction in Illinois because, per Plaintiffs' Complaint and Motion papers, it has acted with the Former Employees to engage in misappropriation of Presidio Illinois-related confidential information and solicitation of Presidio's Illinois-based customers and partners. *See MG Design Assocs., Corp. v. CoStar Realty Info. Inc.,* 267 F. Supp.3d 1000,1018-1019 (N.D. Ill. 2017) (finding specific personal jurisdiction because the out-of-state defendant tortiously interfered with plaintiff's business in Illinois); *Optimas OE Solutions LLC,* 2020 WL 4365917, at *8 (finding jurisdiction was proper over corporate defendant that "allegedly induced Individual Defendants to undertake that misappropriation").

Here, PDT acted in concert with Kundert, Brehm, and Splinter to steal Presidio customers located in Illinois and opportunities related to partners based in Illinois and has tortiously interfered with Presidio's business relationships with customers and partners located in Illinois. In particular, PDT now works with various partners and customers in Illinois (who used to be Presidio's) due to their Illinois-related misconduct. (*See* 4/24 Dykhoff Decl. ¶ 7; 5/24 Dykhoff Decl. ¶ 6.) For example, ███████████ is now a customer of PDT due to the coordinated efforts made by Kundert, PDT, and Pure Storage representatives located in Illinois. (4/24 Dykhoff Decl. ¶¶ 25-26; 5/24 Dykhoff Decl. ¶13.) Immediately after Kundert joined PDT, Kundert also worked with Pure Storage representatives in Illinois to divert an ██████ storage expansion opportunity from Presidio to PDT. (*See id.*) Brehm's coordinated activities with PDT and certain Illinois-based Cisco representatives have also resulted in the tortious interference with Presidio's business relationship with ██████, who has since diverted even more of its business to PDT. (*See* 4/24 Dykhoff Decl. ¶ 7; 5/24 Dykhoff Decl. ¶ 6.)

-11-

As demonstrated above, PDT now works with these same partners located in Illinois to service and sell to the customers it stole from Presidio, but the evidence indicates that this is merely part of a larger picture. Presidio cannot be expected to possess information regarding the full scope of PDT's specific Illinois-related misconduct at this stage, but the evidence here clearly "establish[es] a colorable showing that the Court might properly exercise jurisdiction." *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 136 F. Supp. 3d 968, 976 (N.D. Ill. 2015). At a minimum, Presidio is entitled to jurisdictional discovery because the evidence "establish[es] a colorable showing that the Court might properly exercise jurisdiction." *Id.* at 973 (granting jurisdictional discovery to determine the volume of defendant's sales or revenue derived in particular states because plaintiffs could not "be expected to possess such information without conducting discovery"); *Gilman Opco LLC v. Lanman*, No. 13-cv-7846, 2014 WL 1284499 at *7 (N.D. Ill. Mar. 28, 2014) (noting "low hurdle for obtaining discovery to clarify the jurisdictional issues" and granting limited jurisdictional discovery on the scope of defendant's business in Northern District of Illinois).

Accordingly, in the event that this Court finds any ambiguity regarding the jurisdiction issue, Presidio should be permitted to engage in limited jurisdictional discovery.

## II. PLAINTIFFS HAVE STATED PLAUSIBLE CLAIMS AGAINST ALL DEFENDANTS

Next, Defendants argue that even if this Court has jurisdiction over all Defendants, the Complaint should be dismissed because it fails to state a claim. (Opp. 16-30.) But Presidio's allegations here are sufficient to state plausible claims against all Defendants.

### A. Plaintiffs Have Sufficiently Pled a Claim for Misappropriation of Trade Secrets Against All Defendants

Defendants argue that Presidio has failed to state a claim for trade secret misappropriation because the Former Employees' mass deletion of Presidio information and documents does not

-12-

constitute misappropriation. (Opp. 17-20.) But Defendants fail to cite a single case where a trade secret misappropriation claim was dismissed based on allegations of improper mass deletions. Defendants also fails to distinguish *Mickey's Linen v. Fischer*, No. 17 C 21549, 2017 WL 3970593 (N.D. Ill. Sept. 8, 2017). Defendants argue that deletion of computer files in that case was accompanied by other misconduct that Presidio does not allege here. Not true. First, Presidio does allege other conduct, including Brehm's misappropriation of the PRISM PowerPoint, Kundert's coordinated effort with Pure Storage to divert opportunities, and the manipulation of SalesForce data. Moreover, Defendants fail to address that the Former Employees mass deleted information from their Presidio-issued laptops *after receiving explicit instructions not to.* And the mass double deletions relate directly to the customers and partners at issue. (*See, e.g.*, 4/24 Barnett Decl. ¶ 14; Korreck Decl., ECF 49, ¶¶ 14-16.) This targeted and intentional misconduct is precisely what allows for an inference of misappropriation and discounts any explanation that Defendants might give. *See Mickey's Linen*, 2017 WL 3970593, at *11.

Presidio's Moving Papers have demonstrated that courts routinely find mass deletion to constitute circumstantial evidence of misappropriation. *See Mickey's Linen*, 2017 WL 3970593, at *11; *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 124 (S.D.N.Y. 2008). The mass deletion in the instant case—which remains undisputed by Defendants— is unrebutted evidence that the Former Employees are hiding even greater misconduct from Presidio. Plaintiffs' forensic expert has even confirmed that the files have been "double-deleted"—meaning that they were not only moved to the Recycle Bin, but also then deleted *from* the Recycle Bin, such that they are permanently deleted from the machine. This confirms the Former Employees' intention to misappropriate Presidio information without a trail. (6/24 Scatton Decl. ¶¶ 5, 6; Barnett Decl. ("6/24 Barnett Decl.") ¶¶ 5, 6.) Presidio has not only established the misconduct, which was not challenged by Defendants,

-13-

but is also entitled to additional forensic analysis to determine the extent of the Former Employees wrongdoing. *See Treppel*, 249 F.R.D. at 124 (finding that plaintiff was "entitled to a forensic search of [individual defendant's] laptop computer at the defendants' expense" when the individual defendant deleted documents despite a duty to preserve). Indeed, this is the core request in the Motion.

Although Defendants purport to respond to the forensic evidence in the Motion, Defendants' arguments merely mischaracterize and nitpick KLDiscovery's findings—but never contradict them. Defendants do not even offer a rebuttal forensics expert of their own, and the new declarations from Brehm and Kundert tellingly only focus on personal jurisdiction, not misappropriation. None of this stands up to the findings and opinions of Presidio's experts, who have specifically opined that the Former Employees acts are indicative of wrongdoing and require further investigation. (*See* 4/24 Barnett Decl. ¶ 17; 4/24 Scatton Decl. ¶¶ 8-9.)

Defendants claim that the "only" evidence of the Former Employees' misconduct is their deletion of Presidio documents. (*See* Opp. 17-20.) Not so. The Former Employees' mass deletion of Presidio files is merely one piece of a larger puzzle. Not only has Presidio demonstrated the Former Employees' individual misconduct, the evidence, considered collectively, also shows that the Former Employees *acted together* to delay opportunities and misappropriate Presidio's proprietary and confidential information.

In particular, Presidio has shown that the Former Employees' roles at PDT will lead to the imminent and inevitable disclosure of Presidio's trade secrets and allow PDT to further benefit from the use of Presidio's confidential information. (*See* Mot. 24-26.) Defendants have failed to address the close working relationship between the Former Employees while at Presidio, where they worked together to, among other things, place orders, interact with partners, develop pricing

-14-

and margins, and coordinate customer requirements with Presidio's implementation technology. (4/24 Dykhoff Decl. ¶¶ 7, 17, 19.) Defendants have likewise failed to address that the Former Employees are now working at PDT—a carbon copy of Presidio—*in the same roles to serve the same customers* that they did while at Presidio. (*See* Mot. 25.) The Former Employees' access to confidential information, pricing, customer requirements and opportunities—coupled with all of the other evidence of their misconduct—ensure the Former Employees' use and reliance upon the confidential and proprietary information they acquired while working at Presidio for the benefit of PDT. [3]

**B.    Plaintiffs Have Sufficiently Pled a Claim for Breach of Contract against the Former Employees**

1.    Illinois Law Applies to the Agreements.

Defendants argue that Illinois law does not apply to the Agreements—even as to Splinter, who lives and works in Illinois—because the Agreements' choice of law provision does not designate Illinois as the forum and the "most significant contacts" to the contract are in Wisconsin. (Opp. 21-22.) But the Agreements, in fact, contemplate Illinois as the appropriate forum insofar as the Former Employees conducted business there. (*See, e.g.*, Korreck Decl., ¶ 5 & Ex. D (providing that the Agreement is to be "governed by, construed and enforced in all respects, in accordance with the laws of each state").)

---

[3] *See, e.g., Groupon, Inc. v. Shin*, No. 21 C 60829, 2022 WL 60526 at *6 (N.D. Ill. Jan 9, 2022) (finding plaintiff sufficiently pled a claim for misappropriation of trade secrets when "Groupon has shown that Mr. Shin left Groupon for a substantially similar position with a competitor, and the disclosure of trade secrets . . . is inevitable"); *Mickey's Linen*, 2017 WL 3970593, at *13 (former employer established former employee and competitor threatened to misappropriate trade secrets by demonstrating employee was a key account representative before joining former employer's competitor in a comparable role and failing to return former employer's confidential documents).

Moreover, Illinois "bears a reasonable relationship" to the parties and Presidio's injuries. *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 951-52 n.5 (N.D. Ill. 2006) (quoting *Potomac Leasing Co. v. Chuck's Pub, Inc.,* 509 N.E.2d 751, 755 (Ill. App. Ct. 1987)) (noting that the reasonable relationship test, which governs choice of law as to breach of contract claims in Illinois, is much less rigorous than the tests for personal jurisdiction and venue)). Specifically, Splinter's residence in Illinois, along with her routine performance of the Splinter Agreement in the state, subjects her to Illinois law for purposes of Plaintiffs' breach-of-contract claim. Though Brehm and Kundert do not reside in Illinois, their repeated work with Splinter and other Illinois-based partners, service of Illinois-based customers, and use of Illinois-based resources is also sufficient to satisfy the reasonable relationship test. Furthermore, as Presidio has previously noted, many of its injuries have arisen from Brehm and Kundert's Illinois-related misconduct. These considerations weigh in favor of applying Illinois law to the Agreements.

2.    <u>The Agreements are enforceable contracts under Illinois law.</u>

In the Opposition, Defendants are betting on the application of Wisconsin law to the Agreements to avoid disputing the validity of the Agreements under Illinois law (though, as explained *infra*, Defendants are wrong on Wisconsin law as well). (*See* Opp. 22-23.) This is likely because, under Illinois law, the Agreements are clearly enforceable; Defendants do not seriously contest this. The restrictive covenants in the Agreements are reasonably related to the protection of Presidio's legitimate business interests in maintaining the confidentiality of its pricing strategies, its customers, and their particular projects and preferences—all of which constitutes a legitimate interest under Illinois law. *See, e.g.*, *Fisher/Unitech, Inc. v. Computer Aided Tech., Inc.*, 2013 WL 1446425, at *3 (N.D. Ill. Apr. 9, 2013) ("There is no question that protecting confidential operational and customer information is a legitimate, protectable business interest of an employer"); *Millard Maint. Serv. Co. v. Bernero*, 566 N.E.2d 379, 386 (Ill. App. Ct. 1990) ("In

-16-

Illinois, an employer has a protectable interest in its customers"); *McElroy, Inc. v. Delaney*, 389 N.E.2d 1300, 1307 (Ill. App. Ct. 1979) (holding the "advantage gained by the potential use of confidential information is a legitimate business interest protectable by [a restrictive] covenant").

3.    The Agreements will still be enforceable even if Wisconsin law is applied.

Even if Wisconsin law is applied to the Agreements, the Agreements would still be enforceable. Defendants misstate the law when they claim that under Wisconsin law, "[a]ny confidentiality provision that lacks a time or geographic restriction is void." (Opp. 23.) To the contrary, "the Wisconsin Supreme Court has held that restrictive covenants lacking territorial limitations in geographic terms are not unreasonable per se." *Kohler Co. v. Truenorth Collective LLC*, Case No. 21-CV-1307, 2022 WL 860624, at *4 (E.D. Wis. Mar. 23, 2022) (citing *Henderson v. U.S. Bank, N.A.*, 615 F. Supp. 2d 804, 810 (E.D. Wis. 2009)). Indeed, Wisconsin law expressly permits employers to "substitute a territorial restriction with customer or client limitations," as Presidio has done here. *Kohler*, 2022 WL 860624, at *4.

Through the Agreements, Presidio merely seeks to protect its legitimate business interests by prohibiting the retention, dissemination, and replication of the confidential pricing and customer strategies *on which the Former Employees worked while at Presidio*. Presidio likewise seeks to protect its legitimate business interests by prohibiting the solicitation and poaching of its employees by individuals, like Brehm, who have recently resigned. These are recognized as reasonable and narrowly tailored restrictions under Wisconsin law. *Kohler,* 2022 WL 860624, at *4. Furthermore, Defendants do not dispute that Wisconsin courts have recognized Presidio's concerns regarding the confidentiality of its customer and pricing information as legitimate business interests worthy of the protection of restrictive covenants. *See Techworks, LLC v. Wille*, 770 N.W.2d 727, 734 (Wis. Ct. App. 2009) ("customers [are] the most valuable asset of the enterprise. In recognition of this fact, customer goodwill has been recognized as a property interest

-17-

in and of itself"); *see also Star Direct, Inc. v. Dal Pra*, 319 Wis. 2d 274, 298 (Wis. 2009) (finding that it was "beyond dispute" that pricing information "may be a proper subject of protection by restrictive covenant").

Defendants' cases are inapposite.  In *Share Corp. v. Momar Inc.*, the court invalidated a non-disclosure agreement because it prohibited disclosure of company information "to *any* person, firm, corporation, association, or other entity for *any* reason or purpose whatsoever" without any time limitations.  No. 10-CV-109, 2011 WL 284273, at *7 (E.D. Wis. Jan. 26, 2011).  That is not the provision at issue here.  Furthermore, the case on which it is based (and which Defendants also cite), *Friemuth v. Fiskars Brands*, is no longer good law in light of the Eastern District of Wisconsin's more recent holding in *Kohler*, 2022 WL 860624, at *4 (E.D. Wis. Mar. 23, 2022) (finding that under Wisconsin law, "restrictive covenants lacking territorial limitations in geographic terms are not unreasonable per se").[4]

At a minimum, if Wisconsin law is applied, this Court should permit the development of the evidentiary record before deciding whether the restrictions in the Agreements are unenforceable under Wis. Stat. § 103.465.  *See Aon Risk Servs., Inc v. Liebenstein*, 710 N.W.2d 175, 186-187 (Ct. App. Wis. 2005) ("The Record here does not present us with the requisite 'totality of the circumstances from which to assess the enforceability of the agreements"); *Kohler*, 2022 WL 860624, at *4 ("this court cannot conclude that the Non-Competition provision is

---

[4] Defendants' remaining case on this issue is also easily distinguished.  In *Diamond Assets LLC v. Godina*, the court found the confidentiality covenant invalid based on the expansive definition of "Confidential Information" that included "*all* documents and information."  979 N.W.2d 586, 605 (Wis. Ct. App. 2022.)  The Agreements, in contrast, provide a definition of "Proprietary Information" that fits a pattern of protectable information.  *See Star Direct, Inc. v. Dal Pra*, 767 N.W.2d 898, 913 (Wis. 2009) ("All of the enumerated examples of protected information in the confidentiality clause are of a proprietary nature").

unreasonable per se. Indeed, there may be some set of facts under which this court could conclude that the Non-Competition provision is reasonable and therefore enforceable").

### 4. The Agreements Apply to PNS' Information.

Next, Defendants raise a "standing" defense related to the Agreements and assert that "the Agreements do not apply to PNS" because they arose from the Netech acquisition. (Opp. 24.) As an initial matter, Defendants' reliance on the prior Southern District of Ohio decision is unavailing. (*Id*. 25.) Indeed, the Ohio court explicitly recognized that "Presidio Holdings [which was not a plaintiff in the prior litigation] . . . was explicitly given the authority to enforce the rights assigned by Netech to PIS in the [assignment and assumption agreement]." *Presidio, Inc. v. People Driven Technology, Inc.*, 686 F. Supp.3d, 652, 680 (S.D. Ohio 2023). In the present litigation, Presidio Holdings is a named plaintiff, obviating any standing issue.

Defendants further criticize the decision reached in Presidio's prior litigation against PDT in the Eastern District of Michigan, *People Driven Technology, Inc. v. Presidio Inc*., Lead Case No. 22-10098, 2023 WL 4932078, at *1 (E.D. Mich. Aug. 2, 2023), where the Court rejected this argument under Michigan law and found that PNS was entitled to enforce substantially similar agreements. (Opp. 25.) Although Defendants claim that the Eastern District of Michigan treated the Presidio entities as a "monolith," any other outcome in this context will lead to an absurd result where one company, or an entity that it owns, buys another company but cannot enforce the rights of the company that it owns. This result would fly in the face of corporate law.[5]

---

[5] *See Chemetall GMBH v. Zr Energy, Inc.*, No. 99 C 4334, 2000 WL 1808568, at *2 (N.D. Ill. Dec. 6, 2000) ("A successor corporation in an asset purchase can enforce confidentiality agreements and covenants not to compete that an employee signed with its predecessor corporation"); *Hexacomb Corp. v. GTW Enter., Inc.,* 875 F. Supp. 457, 463-464 (N.D. Ill. 1993) (finding that plaintiff was a successor corporation and thus had acquired the restrictive covenants at issue through an asset purchase agreement).

5.      <u>The Presidio Employee Handbook is An Enforceable Contract</u>

Defendants assert that the Employee Handbook is not an enforceable contract, relying upon disclaimer provisions in the handbook itself. (Opp. 26-27.) This is wrong under Illinois and Wisconsin law. Under Illinois law, the Employee Handbook's disclaimer that it does not "guarantee[] employment for any specific duration" does not preclude the enforcement of the Employee Handbook as a binding contract. *See Forge Indus. Staffing Inc. v. De La Fuente*, No. 06 C 3848, 2006 WL 2982139, at *8 (N.D. Ill. Oct. 16, 2006).[6] Similarly, under Wisconsin law, such disclaimers are "not conclusive" evidence that the Former Employees did not expect or intend to be bound by the terms of the Employee Handbook. *Clay v. Horton Mfg. Co. Inc.*, 493 N.W.2d 379, 382 (Ct. App. Wis. 1992).

**C.**      **<u>Plaintiffs Have Stated Claims for Tortious Interference</u>**

1.      <u>Plaintiffs' Tortious Interference Claims are Not Preempted By ITSA or WUTSA</u>

Defendants assert Presidio's tortious interference claims are preempted by its claims for trade secret misappropriation under the ITSA and WUTSA. (Opp. 27-29.) This argument fails. Under Illinois law, ITSA preemption "does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information." *Mission Measurement Corp. v. Blackbaud, Inc.*, No. 16 C 6003, 2018 U.S. Dist. LEXIS 48809, at *18 (N.D. Ill. Mar. 26, 2018) (finding that tortious interference with contract was not preempted where the claim was based on a separate contract than the one that governed misappropriation of trade secrets); *Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2004 U.S. Dist. LEXIS 14174,

---

[6] In *Forge Indus. Staffing Inc.*, the court found that the employment handbook (with language that is substantially similar to Presidio's) could be an enforceable contract because the disclaimer "d[id] not disavow that it forms any contract whatsoever, *only employment for a certain period of time.*" *Id.* at *8 (emphasis added).

at *69 (N.D. Ill. July 23, 2004) (same); *Polyone Corp. v. Lu,* No. 14 CV 10369, 2018 U.S. Dist. LEXIS 167482, at *11 (N.D. Ill. Sep. 28, 2018) (finding that tortious interference claim was not preempted where the claim was based on breach of non-competition obligations). With respect to the WUTSA, the case law regarding preemption allows even more leeway. In *IDX Sys. Corp. v. Epic Sys. Corp.*, the Seventh Circuit, applying Wisconsin law, found that tortious interference claims that were based on allegations that the defendants encouraged the plaintiff's former employees to breach their non-disclosure agreements were *not* preempted by WUTSA. 285 F.3d 581, 586 (7th Cir. 2002). The court explained that "[t]he tort of inducing breach of a non-disclosure contract . . . is 'not based upon misappropriation of a trade secret," but rather "on interference with the contract." *Id.*; *see also Cranes LLC v. Sany Am., Inc.,* Case No. 13-C-677, 2017 U.S. Dist. LEXIS 236633 (E.D. Wis. 2017) (denying defendant's motion to dismiss a tortious interference claim based on substantially similar allegations).

Here, Presidio's tortious interference claims are not preempted by ITSA or WUTSA because they are not based on the Former Employees' misappropriation of trade secrets and breach of confidentiality obligations. Instead, Presidio's tortious interference claims are based on: (1) PDT's inducement of the Former Employees' breach of the non-solicitation obligations in their respective Agreements by wrongfully diverting business opportunities from Presidio to PDT and (2) interference (by all Defendants) in Presidio's ongoing opportunities and business relationships with its customers. (*See, e.g.*, Compl. ¶¶ 237-247.) This lack of factual overlap between Presidio's tortious interference claims and its misappropriation claims distinguishes Presidio's claims from

those in Defendants' cited case law.[7]  Given that Presidio's tortious interference claims do not rely on *any* of the allegations regarding Defendants' misappropriation or disclosure of trade secrets, it is clear that these claims are permitted to proceed.

        2.    <u>The Former Employees' Data Manipulation Constitutes "Conduct Directed at a Third Party"</u>

Defendants further argue that Plaintiffs' tortious interference claims fail to the extent that they are based on the allegations regarding the Former Employees' manipulation of Salesforce data because this is not "conduct directed at a third party." (Opp. 29.)  But here, Defendants ignore the fact the Former Employees intentionally chose to manipulate the data or delay the closing dates of the specific Presidio opportunities they planned to divert to PDT.  To the contrary, Plaintiffs have demonstrated a direct connection between the Former Employees' data manipulation and the opportunities that Presidio lost.

For example, Kundert intentionally delayed the closing date of storage expansion opportunity for ▮▮▮▮▮▮ so that he could pursue it on behalf of PDT. (*See* 4/24 Dyckhoff Decl. ¶¶ 23, 25.) A misdirected email from a Pure Storage representative out of the Chicago office later confirmed to Presidio that Kundert met with Pure Storage representatives for the ▮▮▮▮▮ ▮▮ storage expansion opportunity immediately after he joined PDT.  (*See* 4/24 Dyckhoff Decl. ¶ 25.)  Another example is ▮▮▮▮. Weeks after Kundert manipulated the SalesForce information related to Presidio's deal and departed for PDT, ▮▮▮▮ notified Presidio without warning that it

---

[7] *Cf. Opus Fund Servs. (USA) LLC v. Theorem Fund Servs. LLC*, No. 17-C-923, 2017 U.S. Dist. LEXIS 160649, at \*13-14, 2017 WL 4340123, at \*5 (N.D. Ill. Sept. 2 2017) (finding that ITSA preempted tortious interference claims when based on defendants' use of trade secrets and confidential information to target plaintiff's customers).[7]  If anything, *Burbank*—Defendants' one WUTSA case—supports a more limited scope of WUTSA preemption.  *See Burbank Grease Servs., LLC v. Sokolowski*, 717 N.W.2d 781, 785, 793 (Wis. 2006) (finding that WUTSA only displaces remedies "dependent solely on the existence of a specific class of information statutorily defined as 'trade secrets'").

-22-

would no longer be pursuing the opportunity with Presidio.  (*See* 4/24 Dykhoff Decl. ¶¶ 22, 27, Ex. H.)

### D.     Presidio Has Sufficiently Pleaded Breach of Fiduciary Duty By Splinter

Defendants argue that the "complaint contains no specific allegations about Ms. Splinter . . . soliciting customers while still employed by Presidio," but Defendants conveniently ignore the unrebutted evidence that Presidio has presented to support its breach of fiduciary duty claim against Splinter.  (*See* Opp. 30.)  Here, Presidio has clearly demonstrated that Splinter is involved in a wider scheme of corporate espionage with Brehm and Kundert.  The Former Employees' coordinated resignation and misconduct—including mass deletion of files by Splinter herself—demonstrate that they are acting together to delay and divert Presidio opportunities. Indeed, the Defendants' alleged misconduct is likely only the tip of the iceberg— now that she is at PDT, Splinter is in a position to exploit her access to and knowledge of Presidio's confidential information, especially since she is working with Brehm and Kundert again.[8]  Thus, this Court should permit Presidio's breach of fiduciary duty claim against Splinter to proceed.

## III.    THE COURT SHOULD GRANT THE PRELIMINARY INJUNCTION

Defendants do not dispute the overwhelming evidence provided by Plaintiffs and their forensic experts related to their wrongful conduct because they cannot.  This is a Preliminary Injunction Motion – Defendants are required to provide actual evidence opposing the evidence submitted by Plaintiffs.  11A Charles Alan Wright et al., Federal Practice and Procedure Civil §

---

[8] These factual allegations are sufficient to support an inference that Splinter breached her fiduciary duty to Presidio.  *See Cook ex rel. Career Educ. Corp. v. McCullough*, No. 11-cv-9119, 2012 WL 3488442, at *5 (N.D. Ill. Aug. 13, 2012) ("To survive a Rule 12(b)(6) motion, a complaint alleging breach of fiduciary duty must plead facts supporting an inference of breach"); *see also Lucero v. Credit Union Ret. Plan Ass'n*, No. 22-cv-208-JDP, 2023 WL 2424787, at *2 (W.D. Wis. Mar. 9, 2023) ("In this case, like many cases involving claims for breach of fiduciary duty ... plaintiffs must rely on circumstantial allegations to support a plausible claim").

2949 (2d ed.) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction"); *see also U.S. v. Dental Care Associates of Spokane Valley*, No. 2:15-CV-23-RMP, 2015 WL 7430022, at *3 (E.D. Wash. Nov. 20, 2015) (granting preliminary injunction when "[d]efendants fail to provide any evidence to the contrary"). Defendants fail to provide ***any evidence*** refuting Plaintiffs' showing that there was massive deletion of files and browsing history during the Former Employees' last days of employment at Presidio, even after Presidio instructed the Former Employees not to delete anything. Nor do Defendants provide any response to Plaintiffs' forensic expert's opinion that the Former Employees' conduct raises the possibility of "malicious destruction of company property" and an attempt to obscure potentially malicious activities. (4/24 Barnett Decl. ¶ 11.) Defendants fail to submit any forensic reports of the Former Employees' personal devices or any sworn declarations from the Former Employees stating the reasons for the Former Employees' destruction of Presidio's trade secrets and confidential information. In short, Plaintiffs' forensic evidence and declarations are unrebutted. Nor do they address the documents and information taken or diverted, including the documents emailed to personal emails and the misdirection of Pure Storage to the Kundert personal email. Based on this alone, the Court should grant Plaintiffs' requested preliminary injunction.

### A. Plaintiffs are Likely to Succeed on the Merits of their Claims

As discussed above, Presidio has established that this Court has personal jurisdiction over PDT, Kundert, and Brehm. (*See supra* I.A.) Presidio has further established, as detailed below, that it has a high likelihood of success on the merits of each its claims, particularly because "the threshold for demonstrating a likelihood of success on the merits is low." *Aon Risk Servs. Cos., Inc. v. Alliant Insurance Servs., Inc*., 415 F. Supp. 3d 843, 848 (N.D. Ill. 2019) (citing *D.U. v. Rhoades*, 825 F.3d 331, 338 (7th Cir. 2016)).

-24-

1.   <u>Trade Secrets</u>

Defendants argue that Plaintiffs will not prevail on their trade secrets claim because (i) Plaintiffs fail to identify their trade secrets or explain how the information that Defendants misappropriated constitute trade secrets and (ii) Plaintiffs do not offer any evidence that they took "reasonable measures to keep such information secret." (Opp. 33.) Defendants are wrong on both counts.

*First*, Plaintiffs have sufficiently identified the files that they allege to be trade secrets. Plaintiffs have provided specific examples of their alleged trade secrets (such as the ███████ ███ PRISM analysis PowerPoint, list of Presidio customer names, and specific file names related to pricing and customer requirements) and a detailed explanation as to why they are economically valuable to Presidio. (*See* 4/24 Barnett Decl., Ex. B; 4/24 Dykhoff Decl., ¶¶ 14, 15; Compl. ¶ 59.) Presidio, in turn, has demonstrated that these documents and materials are trade secrets. For example, Presidio explained that the ████████ PRISM analysis PowerPoint "list[s] the specific services and benefits Presidio offered through PRISM and the pricing for each service and benefit." (4/24 Dykhoff Decl. ¶ 14.) Courts in this district have repeatedly held that proposed solutions for client's "pain points" constitute trade secrets since they are "non-public and include essentially all the background work that a competitor would have to undertake before pitching their own services to the same client." *Vendavo, Inc. v. Long*, 397 F. Supp. 3d 1115, 1132 (N.D. Ill. 2019); *see also Mickey's Linen*, 2017 WL 3970593, at *9 ("customer-specific information warrants trade secret protection so long as it was maintained in confidence."); *APC Filtration, Inc. v. Becker*, 646 F. Supp. 2d 1000, 1010 (N.D. Ill. 2009) (finding "customer-specific information, such a product preferences and deviated pricing" to be protectable trade secrets).

Plaintiffs have also sufficiently demonstrated that their pricing and margin information constitutes a trade secret. Brehm emailed an Excel sheet to his personal email address, which

included the margin and cost information related to Presidio's customer ███. (4/24 Dykhoff Decl. ¶ 15.) Kundert and Splinter deleted countless files that contain Presidio's confidential pricing and margin information, including statements of work, quotes, and bills of material that relate to the specific opportunities at issue in this case. (4/24 Scatton Decl. ¶ 9, Ex. B; 4/24 Barnett Decl. ¶ 7, Ex. B). Such information has long been recognized as a protectable trade secret. *Outsource Int'l. Inc. v. George Barton*, 192 F.3d 662, 668 (7th Cir. 1999) (holding that cost and pricing figure, and comparable rates are protectable as trade secrets); *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 712 (N.D. Ill. 2009) ("[T]here can be no doubt that this information would provide a competitive advantage to Defendants – knowing the prices offered by a competitor to a specific customer for a specific set of services certainly would enable a competitor to make a more attractive bid in an attempt to displace the current provider"); *Allied Waste Servs. Of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103, 1112 (N.D. Ill. 2016) ("Trade secrets include 6 customer lists that are not readily ascertainable, pricing, distribution, and marketing plans, and sales data and market analysis information.").[9]

*Second*, contrary to Defendants' argument, Plaintiffs have taken reasonable measures to keep such information secret. Presidio requires its employees to sign non-disclosure and confidentiality agreements. (Korreck Decl. ¶¶ 3-4.) Presidio also requires employees to annually

---

[9] The Ohio and Michigan federal district courts in the prior Presidio/PDT litigations also determined that this kind of information qualifies as trade secrets. *See Presidio, Inc. et al.*, 686 F. Supp.3d at 683-686 (denying summary judgment and finding there was a genuine dispute of material fact with respect to whether presales documents, customized solutions, and pricing documents constituted trade secrets); *People Driven Tech., Inc. et al. v. Presidio, Inc. et al.*, No. 4:22-cv-10098-SDK-KGA, ECF 134 at 12 (E.D. Mich. Mar. 20, 2023) (denying motion to dismiss and finding that information including "client preferences, contract information, designs and drawings, pricing methods, profit margins and information, sales, sales volumes and strategies, suppliers, proposals, business strategies, and technical project and customer details" were trade secrets).

review, reacknowledge, and reaffirm their commitment to Presidio's core confidentiality and non-disclosure policies in the Employee Handbook.  (*Id*. ¶ 4.)  In addition, Plaintiffs protect their trade secrets by marking their documents and confidential information as "confidential" or "proprietary."  For example, the ███████ PRISM analysis PowerPoint is clearly marked as "© 2020 Presidio, Inc. All rights reserved. Proprietary and Confidential."  (4/24 Dykhoff Decl. Ex. C.)  Courts routinely find such measures reasonable to protect and maintain the confidentiality of trade secret information.  *See Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, Case NO. 17 C 8816, 2018 WL 636769, at *4 (Jan. 31, 2018) (finding that marking information as confidential is a reasonable measure to keep the information secret).

Defendants further argue that Plaintiffs failed to take reasonable measures to protect their trade secret because they relied on "old Netech Agreements, which were with the prior employer" and which "are void under Wisconsin law."  (Opp. 33.)  But Defendants' argument depends on this Court's finding that the Netech Agreements are void and do not apply to PNS's information, which, as discussed *supra* II.B, is unsupported by the law.  Defendants' assertion that Presidio's confidentiality policy "fails to specify which information must be kept confidential" is also easily refuted.  (Opp. 33.)  To the contrary, the Agreements provide a specific definition for the "Proprietary Information" that it requires and expects employees to maintain in confidence.  (*See, e.g.*, Korreck Decl. Ex. D at 8 (including, among other things, "information about Netech's trade secrets, business methods, processes, assets, profitability, services, [and] sales").)

Defendants' arguments specifically relating to each Former Employee likewise fail.

### Kundert

Kundert fails to provide any credible explanation as to why he deleted more than 1,400 files from his Presidio laptop on March 13, 2024, just two days prior to his last day at Presidio.

Kundert fails to explain why he cleared his browsing data on March 14, 2024 and March 15, 2024. Indeed, Plaintiffs' forensic expert opined that "these actions could be interpreted as malicious destruction of company property and an attempt to obscure potentially malicious web-based activities." (4/24 Barnett Decl. ¶ 11.) Plaintiffs' forensic expert further opined that clearing of the browser history was particularly concerning since Plaintiffs would not be able to detect whether Kundert uploaded Presidio files from his Presidio laptop to a cloud-based repository. (*Id.*)

Defendants' failure to provide any forensic review or analysis of Kundert's personal devices is telling. Moreover, similar to the defendant in *Mickey's Linen*, Kundert has demonstrated a lack of credibility. Kundert admitted to Ms. Korreck, Presidio's Senior HR Business Partner, during his exit interview that he had "cleaned up" his Presidio email prior to receiving Korreck's exit email (which directed him not to delete anything). (Korreck Dec. ¶ 17.) Kundert claimed that he was not aware that he was not supposed to do that (*id.*), but forensic review of Kundert's Presidio email account revealed that Kundert continued to delete Presidio emails ***even after*** receiving Korreck's explicit instructions, including after the start of Kundert's exit interview. (*Id.* ¶ 14.)

Kundert also laid the groundwork while he was still a Presidio employee to compete unfairly with Presidio on PDT's behalf. Just three days prior to Kundert's last day at Presidio, Kundert attempted to implement a change to Presidio's contact information for Pure Storage business from Presidio to his personal email address just three days prior to his last day at Presidio. (4/24 Dykhoff Decl. ¶ 26.) Kundert also intentionally delayed multiple opportunities related to Presidio customer ████████████ on Presidio's SalesForce system (*id.* ¶ 22), and deleted thousands of ████████-related files during his last few days at Presidio. (4/24 Barnett Decl. ¶ 7 & Ex. B.) Kundert then wasted no time leveraging this Presidio confidential information to

-28-

divert ███████████ to PDT: immediately after Kundert joined PDT, the Illinois representatives

for Pure Storage reached out to Kundert to "sync up quickly on ███." (*Id.* ¶ 25.)

Based on the unrebutted evidence of Kundert's mass deletion of files and web-browsing

history, and his demonstrated lack of credibility, this Court should find that Plaintiffs have

demonstrated a likelihood of success on their trade secret misappropriation claim against Kundert.

### **Brehm**

Defendants argue that Brehm did not misappropriate any trade secrets because Brehm's

supervisor was copied on the email in which he forwarded a spreadsheet with margin and cost

information related to Presidio's customer ████. (Opp. 34.) However, Defendants specifically

ignored the cease and desist letter on April 4, 2024, requesting the review of the Former

Employees' personal devices. (Compl. ¶ 127; Hahn Decl., Ex. A.) Brehm failed to respond to

Plaintiffs' cease and desist letter. Brehm and PDT are now attacking the exact customers for which

they have confidential data on pricing and margin.

Defendants also argue that forwarding an email from a Presidio email address to a Presidio

email address cannot be misappropriation. (Opp. 35.) Plaintiffs' forensic expert, however,

provided an opinion that such files can be used to transfer to his personal email address via a

mobile phone. (4/24 Barnett Decl. ¶ 17.) Brehm ignores this in his declaration. Defendants overall

fail to provide any rebuttal evidence as to why Brehm forwarded the PowerPoint presentation just

eight days prior to his last day at Presidio to his Presidio email for no Presidio business purpose.

Brehm fails to provide *any explanation* in his declaration as to why he engaged in such behavior.

And contrary to Defendants' assertion, Plaintiffs have demonstrated why this PowerPoint

constitutes a trade secret of Presidio's. Brehm's supervisor at Presidio, Richard Dykhoff,

specifically stated that "[t]he powerpoint contained Presidio's confidential and proprietary

information, listing the specific services and benefits Presidio offered through PRISM and the pricing for each service and benefit." (4/24 Dykhoff Decl. ¶ 14.) Dykhoff also stated that he was not aware of Brehm working on any PRISM opportunities on behalf of Presidio at the time, which makes Brehm's conduct of emailing the powerpoint even more suspicious. (*Id.*)

### **Splinter**

Defendants argue that Plaintiffs' trade secret claim is limited to the "email that she sent to her Gmail account on her departure." (Opp. 34.) This is incorrect. Defendants ignore and neglect to explain Splinter's deletion of 7,108 files right before her departure. Splinter fails to provide any forensic evidence disputing that she did not take any of the 7,108 files she deleted ***after*** specifically being instructed not to do so by Presidio's Senior HR Business Partner. Contrary to Defendants' argument that all of Splinter's deleted files were moved to the recycle bin and therefore could have been recovered, Plaintiffs' forensic expert has confirmed that the files have been "double-deleted", meaning they would not have been, and are still not, recoverable. (6/24 Scatton Decl. ¶¶ 5, 6.)

More importantly, Defendants fail to address the significance of the mass deletion of the files. Due to Splinter's deletion of more than 7,108 files on January 19, 2024, Plaintiffs cannot determine what Splinter did with those files prior to deletion. Here, "direct evidence of theft and use of trade secrets" is not available to Plaintiffs due to Splinter's mass deletion. *Mickey's Linen*, 2017 WL 3970593, at *11. In such instances, plaintiffs "can rely on circumstantial evidence to prove misappropriation by drawing inferences perhaps from ambiguous circumstantial evidence." *Id.*; *see also Aon Risk Servs.*, 415 F. Supp. 3d at 848 (granting TRO when plaintiff "offers circumstantial evidence like the fact that [defendants] had no reason to download sensitive documents to USB drives when they could have accessed them through Aon's VPN network or that [defendant] downloaded the contact list only after meeting with Alliant.").

-30-

As in *Mickey's Linen*, it is "impossible to determine [if the defendant had] sent [trade secret information] to anyone." 2017 WL 3970593, at *11. This is especially true since based on forensic review, Splinter constantly accessed her gmail account while she was deleting documents off of her Presidio laptop. (4/24 Scatton Decl. ¶ 7 ("Based upon my review of the forensic images created from the Laptop, I determined that the profile ASplinter frequently used a Google Chrome web browser to access a Gmail account from the Laptop between the dates of July 13, 2023 to January 19, 2024.").) Splinter's constant use of her personal gmail account on her Presidio laptop, along with her suspicious deletion of 7,108 files on the eve of her departure after being told not to, provide more than sufficient evidence of misappropriation.

### PDT

Plaintiffs have provided overwhelming evidence of multiple opportunities being stolen by PDT. For example, all of Cisco's work with ███ is now with PDT. (4/24 Dykhoff Decl. ¶ 11.) Brehm misappropriated a spreadsheet containing the margin and pricing information of ███ (*id.* ¶ 15), and many of the files that Splinter deleted are related to ███. (4/24 Scatton Decl. Ex. B.) Presidio's customer ███ is also now with PDT. Indeed, Kundert deleted multiple files related to ███ right before his departure from Presidio. (4/24 Barnett Decl., Ex. B.) Brehm also misappropriated the ███ PRISM analysis powerpoint. (4/24 Dykhoff Decl. ¶ 14, Ex. C.) Presidio also lost its SmartNet renewal opportunity for customer ███ due to Kundert's misappropriation of Presidio's trade secrets.

Plaintiffs have sufficiently demonstrated that the Former Employees misappropriated Plaintiffs' trade secrets for PDT's benefit. In *Inventus Power, Inc. v. Shenzhen Ace Battery Co., Ltd.*, Case No. 20-cv-3375, 2020 WL 3960451 (N.D. Ill. July 13, 2020), the court granted temporary restraining order against defendant, inferring from the defendant's suspicious mass

downloads right before departing plaintiff's company "that the alleged theft . . . was directed by [d]efendant employees . . . while acting within the scope of their employment at [d]efendant." *Id.* at *11. The court also found that the evidence supported imposing liability on defendant on a *respondeat superior* theory. *Id.* PDT and the Former Employees have similarly failed to contravene or explain the suspicious forensic activity or delaying of opportunities in SalesForce. Given that this misconduct was followed by the Former Employees' diversion of business to PDT, an inference should be drawn that it was for PDT's benefit.

Finally, Plaintiffs' motion for expedited discovery is also pending. (*See* ECF 55.) Plaintiffs will be able to further demonstrate that the Former Employees used Presidio's files and information to win additional bids and opportunities on behalf of PDT.

**<u>Inevitable Disclosure</u>**

Defendants' argument that Plaintiffs' cannot rely on the inevitable disclosure theory is similarly unavailing. Defendants cite to *Aon PLC v. Alliant Ins. Servs., Inc*., No. 23-cv-03044, 2023 WL 3914886, at *5 (N.D. Ill. June 9, 2023) to argue that the inevitable disclosure is foreclosed for claims under the DTSA. (*See* Opp. 27-29.) District courts in Illinois, however, have repeatedly applied the inevitable disclosure theory under the DTSA.[10] Defendants further argue that Plaintiffs "have failed to identify any specific trade secrets that they contend will be inevitably disclosed." (Opp. 37.) Plaintiffs, however, specifically listed the files that Defendants deleted prior to their departure, which constitute Plaintiffs' trade secrets. (4/24 Scatton Decl. Ex.

---

[10] *See e.g., CZS Holdings LLC v. Kolbe*, No. 20 C 6886, 2021 WL 1837385, at *4 (N.D. Ill. May 7, 2021) (permitting trade secret misappropriation claims to proceed under federal and Illinois law under a theory of inevitable disclosure); *Westrock Co., LP v. Dillon*, Case No. 21-CV-05388, 2021 WL 6064038, at *14 (N.D. Ill. Dec. 22, 2021) ("This doctrine, which the ITSA and DTSA recognize, provides that a court may enjoin threatened misappropriation where a defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets.").

B; Barnett Decl. Ex. B.) Plaintiffs have further alleged that the Former Employees will inevitably rely on Presidio's pricing, margins, customer lists and preferences, and sales strategies to compete against Presidio on behalf of PDT, all of which constitute trade secrets. (Compl. ¶ 150.)[11]

### 2. Breach of Contract

Plaintiffs are likely to succeed on their breach of contract claims because, regardless of whether Illinois or Wisconsin law applies, the Agreements are valid and enforceable contracts that contain reasonable restrictions to protect Presidio's legitimate business interests. (*See supra* II.B.) Defendants do not dispute that the Former Employees breached their respective Agreements.

### 3. Tortious Interference

Plaintiffs are likely to succeed on their tortious interference claims because: (i) those claims are not preempted, (ii) Plaintiffs have provided ample evidence of misappropriation, and (iii) Kundert's manipulation of SalesForce data was specifically directed at third parties. (*See supra* II.C.)

### B. **Plaintiffs Have Demonstrated Irreparable Harm**

Defendants argue that Plaintiffs have not shown that there is any risk of disclosure of any alleged trade secrets and therefore, cannot show irreparable harm. (Opp. 38.) But Plaintiffs have already demonstrated irreparable harm in the form of actual and threatened loss of customers:

---

[11] Defendants rely on *Saban v. Caremark RX, LLC*, 780 F. Supp. 2d 700, 734-35 (N.D. Ill. 2011), to argue that "general knowledge of the industry and customer preference" cannot support an inevitable disclosure. (Opp. 37.) But Plaintiffs are not claiming that the Former Employees will merely use their general knowledge of the industry or customer preference. Plaintiffs have shown that the Former Employees have worked on specific deals while employed at Presidio, intentionally delayed the deals, and immediately stole the deals after moving over to PDT. (Dykhoff Decl. ¶¶ 9, 11, 24, 27.) In addition, *Saban* is distinguishable since the court found that there was no likelihood of success on the merits when the previous employer and the new employer rarely competed and the employee's roles at the previous employer and the new employer "do not overlap." *Id*. at 710. Here, PDT is a direct competitor of Presidio and the Individual Defendants were hired in the exact same roles. (Compl. ¶¶ 3, 165, 166.)

Shortly after the Former Employees joined PDT, several Presidio customers, such as ███████ ███, ██████████████████████, █████, and ██████████, informed Presidio they will be working with PDT going forward. This qualifies as irreparable harm as a matter of law, as it is "intangible and cannot be computed in damages." *Moss Holding Co. v. Fuller*, Case No. 20-cv-01043, 2020 WL 1081730, at *9 (N.D. Ill. Mar. 6, 2020).

Moreover, in cases of trade secret misappropriation, there is a "presumption of irreparable harm to plaintiff." *Aon Risk Servs.*, 415 F. Supp. 3d at 851. As the *Aon* court found, considering the "type and amount of materials the [Former Employees] have admitted to taking" and because "it would be essentially impossible to determine the costs" of PDT employees using any of these materials in direct competition with Presidio, this Court must find that "there is a real risk of irreparable injury to Aon in the absence of a TRO." *Id.*

Defendants' argument that Plaintiffs improperly delayed bringing claims against Brehm and Splinter in this action is a red herring. (Opp. 39.) Plaintiffs did not file suit immediately after Brehm and Splinter left because Plaintiffs wanted to conduct a thorough and deliberate investigation. The findings from Plaintiffs' investigation of Kundert—merely a couple months later—helped to reveal the grander scheme of the Former Employees' misconduct.

Finally, Presidio is not seeking a "substantially identical injunction" to that which was entered in the prior litigation. The permanent injunction from the prior litigation does not encompass the misconduct of the Former Employees or the customers and geographical regions that they serve, nor does it call for the requested forensic examination. Entry of Presidio's

requested injunction here remains urgent, especially when considering the harm that Presidio has and will otherwise continue to suffer.[12]

### C.    The Balance of Harms and the Public Interest Favors Plaintiffs

Defendants argue that there is a "real risk that Plaintiffs are using this motion for improper purposes." (Opp. 40.)  That is simply not true.  Contrary to Defendants' claim that Presidio commences litigation because it is "unable to compete" in the marketplace (*see* Opp. 40), Presidio does not have to resort to legal action to maintain its competitive standing.  Presidio is a long-recognized industry leader whose trade secrets and industry profile its competitors frequently seek to replicate.  Like any large company, employees join and leave Presidio.  Presidio does not commence litigation against all employees that leave Presidio, not even close.  Indeed, the proportion of employees that are the subject of litigation is infinitesimal.  It is only those who misappropriate Presidio's trade secrets and engage in other unlawful actions against Presidio.  By commencing this litigation, Presidio has acted properly to protect its legitimate business interests.

The lawsuits that Presidio has filed over the years likewise represent merely a fraction of the employees who have left Presidio—a company with thousands of employees.  Most employees depart in an ethical and legal manner and do not engage in misconduct.  In the rare instance that employees (and their new employers) decide to engage in misconduct, Presidio has properly acted to protect its legitimate business interests, as it has done here.[13]

---

[12] Defendants argue that Plaintiffs' discovery requests demonstrate Plaintiffs' "true motivation in bringing this lawsuit . . ." (Opp. 41.)  Plaintiffs' discovery requests are targeted to identifying misappropriation of Plaintiffs' trade secrets and the use of such information.  Based on the thousands of files that were deleted on the eve of departure by Defendants, Plaintiffs are entitled to seek documents related to communications with "Presidio Customers and Contracting Parties," particularly in light of the overwhelming evidence of Defendants' coordinated efforts with Presidio partners to steal Presidio customers.

[13] Furthermore, courts across the country have repeatedly recognized the importance of Presidio's trade secrets, confidential info, and industry leadership by granting Presidio's applications for

## **CONCLUSION**

For the foregoing reasons, Presidio respectfully requests this Court: (i) grant its Motion for Preliminary Injunction; (ii) deny Defendants' Motions to Dismiss For Failure to State a Claim and for Lack of Personal Jurisdiction; and (iii) grant any other relief this Court deems just and proper.

Dated: June 11, 2024                                    Respectfully submitted,

                                                        */s/ Kevin M. Cloutier*
                                                                One of Their Attorneys

                                                        Kevin M. Cloutier (6273805)
                                                        David M. Poell (6302765)
                                                        **SHEPPARD MULLIN RICHTER & HAMPTON LLP**
                                                        321 N. Clark St., 32nd Floor
                                                        Chicago, Illinois 60654
                                                        Tel: (312) 499-6300
                                                        kcloutier@sheppardmullin.com
                                                        dpoell@sheppardmullin.com

                                                        Robert S. Friedman (*pro hac vice*)
                                                        Shin Hahn (*pro hac vice*)
                                                        Joshua I. Schlenger (*pro hac vice*)
                                                        **SHEPPARD MULLIN RICHTER & HAMPTON LLP**
                                                        30 Rockefeller Plaza
                                                        New York, New York 10112
                                                        Tel: (212) 653-8700
                                                        Email: rfriedman@sheppardmullin.com
                                                                shahn@sheppardmullin.com
                                                                jschlenger@sheppardmullin.com
                                                        *Attorneys for Plaintiffs*

---

preliminary injunctions, temporary restraining orders, and other relief in contested proceedings. *See, e.g.*, *Presidio, Inc., et al. v. Pant*, No. 2023-0918-NAC (Del Ch. Oct. 6, 2023) (granting TRO); *Presidio, Inc. et al. v. Theys et al.*, No. 2020-0840-PAF, 2020 WL 5946394 (Del. Ch. Oct. 5, 2020) (granting TRO); *Presidio, Inc., et al. v. Leonard et al.*, No. 2019-0298-JRS (Del. Ch. May 1, 2019) (granting TRO).