UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRESIDIO HOLDINGS INC., ) <br> PRESIDIO NETWORKED ) <br> SOLUTIONS LLC, and ) <br> PRESIDIO NETWORKED ) <br> SOLUTIONS GROUP, LLC, ) <br>   ) <br> Plaintiffs, ) <br>   ) <br> v. ) <br>   ) <br> PEOPLE DRIVEN TECHNOLOGY, INC., ) <br> PAUL BREHM, STEVEN KUNDERT, ) <br> and ANGELA SPLINTER ) <br>   ) <br> Defendants. ) | No. 1:24-CV-02912 <br><br> Judge Edmond E. Chang |

MEMORANDUM OPINION AND ORDER

In 2024, Angela Splinter, Paul Brehm, and Steven Kundert left their jobs at Presidio Networked Solutions, a provider of IT services and products, to join a competitor—People Driven Technology, Inc. (which the parties call PDT). R. 28, Diamandis Decl. at 2.[1] Presidio alleges that during and after their departures, these employees violated their confidentiality agreements with Presidio and misused Presidio's proprietary information. R. 5, Compl. at 2–3. Specifically, Presidio contends that Splinter, Brehm, and Kundert sent confidential information and documents to their personal emails, delayed closing customer deals so that they could divert those customers to PDT, and deleted thousands of emails and files to cover up their wrongdoing. *Id.* at 12–23.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

So Presidio sued Splinter, Brehm, Kundert, and PDT, alleging a litany of claims, including misappropriation of trade secrets, breach of contract, tortious interference, and breach of fiduciary duty. *See* Compl.[2] The Defendants now move to dismiss the claims against Brehm, Kundert, and PDT for lack of personal jurisdiction and move to dismiss the claims against Splinter for failure to state a claim. R. 68, Defs.' Renewed Mot. to Dismiss. Presidio, in turn, moves for a preliminary injunction against the Defendants, arguing that they will cause Presidio irreparable harm if they are allowed to continue using Presidio's confidential information. R. 25, Pls.' Mot. for PI.

The Defendants are right that the Court lacks personal jurisdiction over Brehm, Kundert, and PDT because they lack sufficient suit-related contacts with Illinois. And the Defendants are also right that Presidio fails to adequately state a claim against Splinter. So both motions to dismiss are granted. Finally—and relatedly—because Presidio cannot show a likelihood of success on the merits, its motion for preliminary injunction is denied.

## I. Background

Presidio Holdings Inc., Presidio Networked Solutions LLC, and Presidio Networked Solutions Group, LLC (collectively referred to as Presidio) provide IT services and products to other businesses. R. 34, Dykhoff Decl. ¶ 4. In 2016, Presidio bought

---

[2] The Court has federal-question jurisdiction, 28 U.S.C. § 1331, over the federal trade-secrets claims, and supplemental jurisdiction, 28 U.S.C. § 1367, over the state law claims. Jurisdiction over the remaining state law claims is addressed later in this Opinion.

Netech, another IT services provider, and assumed Netech's employment contracts with its employees. *Id.* ¶ 5; Compl. ¶ 47. Among those who became Presidio employees after the acquisition were Angela Splinter, Paul Brehm, and Steven Kundert. Dykhoff Decl. ¶ 6. All three had sales roles at Netech and Presidio. Compl. ¶ 32 (Brehm was a Senior Account Manager), ¶ 34 (Splinter was an Inside Client Manager), ¶ 36 (Kundert was a Senior Account Manager). When these three employees were at Netech, they all signed confidentiality and non-solicitation agreements with the company. R. 49, Korreck Decl. at 2–3. These agreements provided that the employees would not directly or indirectly use or disclose any of Netech's proprietary information, other than as needed to perform their work. Compl. ¶ 39. They also agreed that if they left Netech, the employees would not take any proprietary information with them and would return all copies of that type of information to Netech. *Id.* ¶ 41. Presidio says that after it bought Netech, Splinter, Brehm, and Kundert's agreements transferred to Presidio, so the employees owed all of these contractual obligations to Presidio. *Id.* ¶ 47.

In early 2024, Splinter, Brehm, and Kundert all resigned from Presidio in quick succession and joined PDT, a smaller and newer IT provider that was founded by the same people who had founded Netech. Diamandis Decl. at 2; Compl. ¶¶ 55–56. Presidio alleges that during and after their departure from Presidio, Splinter, Brehm, and Kundert violated their confidentiality and non-solicitation agreements with Presidio and misused Presidio's proprietary information. Compl. at 12–23.

3

Starting with Splinter, Presidio claims that on her second-to-last day at the company, she sent an email entitled "Presidio docs" to her personal email. *Id.* ¶¶ 100–01. Presidio also says that on Splinter's last day, she deleted thousands of emails from her work laptop that dealt with quotes and purchase orders for Presidio clients. *Id.* at 18.

Next, Presidio asserts that Brehm emailed his personal account a spreadsheet of "December 2023 paid invoices," which contained confidential customer pricing and margin information. *Id.* ¶ 72. Brehm also sent himself a customer sales presentation that contained technology and sales strategies and discount information. *Id.* ¶ 59. Presidio also alleges that Brehm intentionally delayed the closing dates for customer deals in Presidio's internal sales tracking program and that he, like Splinter, deleted thousands of emails during his final days at the company. *Id.* at 14–15.

Lastly, Presidio claims that Kundert also delayed customer deal closing dates, deleted work emails after being told not to do so, and changed the contact information in a customer sales portal from his Presidio email to his personal email address. *Id.* at 20–23.

Based on these allegations, Presidio sued PDT, Splinter, Brehm, and Kundert. Presidio alleges that the Defendants misappropriated trade secrets—in violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836(b)(3), the Illinois Trade Secrets Act (ITSA), 765 ILCS 1065/3, and the Wisconsin Uniform Trade Secrets Act (WUTSA), Wis Stat. § 134.90(3)(a)(1)—breached their contracts with Presidio, committed tortious interference, and violated their fiduciary duties to Presidio. Compl.

4

The Defendants now to move to dismiss the complaint, contending that Presidio lacks personal jurisdiction over PDT, Brehm, and Kundert, and otherwise has failed to adequately state a claim. Defs.' Renewed Mot. to Dismiss. Presidio, for its part, moves for a preliminary injunction, arguing that the Defendants have caused, and will continue to cause, irreparable harm by possessing and using Presidio's proprietary information. Pls.' Mot. for PI.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

5

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Rule 12(b)(2) governs dismissals for lack of personal jurisdiction. Fed. R. Civ. P. 12(b). A complaint need not allege personal jurisdiction, but the plaintiff bears the burden of establishing that jurisdiction is proper once a defendant moves to dismiss on that ground. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When a motion is based solely on the submission of written materials, the plaintiff need only establish a prima facie case of personal jurisdiction. *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). But when there is a dispute in those written materials about the facts necessary to rule on the issue, the Court must grant discovery and hold an evidentiary hearing. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). In the latter scenario, the plaintiff bears a heavier burden; the plaintiff must "prove what it alleged," *id.*, and establish personal jurisdiction by a preponderance of the evidence, *Purdue*, 338 F.3d at 782. If it is found that the court lacks personal jurisdiction over a party, then the complaint must be dismissed as to that defendant. *Id.*

Finally, a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). The moving party must show: "(1)

6

a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) that an irreparable harm will result if the injunction is not granted." *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (cleaned up). If the moving party meets these requirements, then the court balances the nature and degree of the potential harm to each party and the public interest. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008), *abrogated on other grounds by Nken v. Holder*, 556 U.S. 418, 434 (2009).

### III. Analysis

### A. Personal Jurisdiction

For the state law claims, a federal court sitting in diversity "has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue*, 338 F.3d at 779. An Illinois court has personal jurisdiction over a nonresident when Illinois's long-arm statute authorizes jurisdiction and when asserting personal jurisdiction does not violate the Fourteenth Amendment's Due Process Clause. *Hyatt*, 302 F.3d at 713. Because "the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause," the "state statutory and federal constitutional inquiries merge." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); 735 ILCS 5/2–209(c). "The key question is therefore whether the defendant[] ha[s] sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 701 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Put another way, for both the

7

state law claims and the federal law claims, the personal jurisdiction inquiry is the same: whether the Due Process Clause allow the exercise of jurisdiction over the particular defendant.

Personal jurisdiction can take on two forms: general or specific. *See, e.g., Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). General jurisdiction is "all-purpose," *id.* at 138; it allows a party to be haled into the forum State regardless of whether the suit at hand relates to the defendant's forum-State contacts. *Id.* at 127. General jurisdiction exists over a defendant only when that party "conducts continuous and systematic general business with the forum state." *GCIU-Emp. Ret. Fund*, 565 F.3d at 1023. Specific jurisdiction, by contrast, is tied to individual instances of in-state activity related to the plaintiff's claim. *Daimler*, 571 U.S. at 127–28. Specific jurisdiction is proper when a defendant directs his activities at the forum state and the cause of action arises from or relates to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). It requires "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Defendants argue that the Court has neither general nor specific personal jurisdiction over Brehm, Kundert, and PDT. R. 70, Defs.' Resp. Br. at 9–15. That is correct. General jurisdiction requires that the Defendants' affiliations with Illinois are "so continuous and systematic as to render [the Defendants] essentially at home in" Illinois. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up). Brehm, Kundert, and PDT are not at home in Illinois. Brehm and

8

Kundert are both domiciled in Wisconsin. R. 65, Kundert Decl. at 2; R. 67, Brehm Decl. at 2. And PDT is incorporated and headquartered in Michigan. R. 63, Teipel Decl. at 2. So the Court does not have general jurisdiction over these three Defendants. *See Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697–98 (7th Cir. 2015). Splinter concedes that this Court does have general jurisdiction over her, because she is domiciled in Illinois. *See* Defs.' Resp. Br. at 8.

Moving on from general jurisdiction, the Court also lacks specific jurisdiction over Brehm, Kundert, and PDT. For a court to have specific jurisdiction, "the defendant's *suit-related* conduct must create a substantial connection with the Forum State." *Advanced Tactical Ordinance Sys. LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (cleaned up). But Brehm, Kundert, and PDT have had almost no contact with Illinois, falling well short of triggering specific jurisdiction.

Brehm and Kundert both live and work in Wisconsin. Brehm Decl. at 2; Kundert Decl. at 2. Neither of them has any current Illinois-based customers, and they do not solicit any business in Illinois. Brehm Decl. at 2–3; Kundert Decl. at 2–3. Presidio argues that Brehm and Kundert are subject to specific jurisdiction because they worked with sales representatives from non-party companies Cisco and Juniper, which were based in Illinois. R. 79, Pls.' Reply Br. at 6–8. Also, Presidio says that Brehm and Kundert worked with companies that, though headquartered elsewhere, had offices in Illinois. *Id.* at 7–8; Dykhoff Decl. at 3–7. But working remotely with outside contractors who are based in Illinois and working with clients that happen to have Illinois satellite offices do not come close to the Defendants *themselves* creating

9

a substantial connection to Illinois. *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426–27 (7th Cir. 2010); Brehm Decl. at 2–4; Kundert Decl. at 2–4.

Presidio also notes that Kundert used to be the account manager for Versiti, a customer based in Illinois. Pls.' Reply Br. at 8. But Kundert never travelled to Illinois to work with Versiti. Kundert Decl. ¶ 15. And Presidio does not allege that Kundert had any Illinois-based contacts with Versiti that gave rise to the claims that Presidio lodges against Kundert. Rather, Presidio alleges that Kundert changed the closing dates in a digital tracking system for a deal with Versiti. Compl. at 22; Pls.' Reply Br. at 22–23. So again, the Defendants' suit-related conduct does not create a substantial connection to Illinois.

Finally, though Brehm and Kundert worked with Splinter, who does live and work in Illinois, Presidio does not explain how Brehm and Kundert's work with Splinter creates a substantial connection between the Wisconsin-based employees and Illinois. Though Presidio says that Splinter "acted as the center of operations in Chicago for business conducted with Brehm and Kundert," Compl. ¶ 83, Presidio does not explain how Splinter's Illinois-based activities were the key to Brehm and Kundert's misappropriation of Presidio's confidential information and diversion of clients to PDT. The fact that Brehm and Kundert sometimes collaborated with Splinter, who worked remotely from Illinois, is not enough to trigger specific jurisdiction. Teipel Decl. at 2. The Court lacks specific jurisdiction over Brehm and Kundert.

Nor does the Court have specific jurisdiction over PDT. PDT is based in Michigan and does not have an office in Illinois. *Id.* The company has just one Illinois-

based employee—Splinter—but she works fully remotely and works only with non-Illinois customers. *Id.* ¶ 8. PDT has two customers that are based in Illinois, but Presidio does not allege that either of those customers is related to the alleged unlawful conduct in this suit. *Id.* ¶ 7. Presidio claims that PDT "acted in concert with Kundert, Brehm, and Splinter to steal Presidio customers located in Illinois." Pls.' Reply Br. at 11. But Presidio does not identify specific Illinois-based customers that the Defendants poached or any actions that *PDT* took in Illinois. Instead, Presidio again relies on alleging that Kundert, Brehm, and Splinter worked virtually with outside contractors who were based in Illinois and stole customers that have Illinois satellite offices. *Id.* at 11–12. As explained above, that is not nearly enough to qualify as creating a substantial connection between PDT and Illinois. Having one fully remote employee in Illinois, having employees who work remotely with a few Illinois-based outside contractors, and supporting customers with Illinois satellite offices do not add up to PDT purposefully availing itself to Illinois. The Court does not have personal jurisdiction over PDT. So Brehm, Kundert, and PDT are all dismissed from this lawsuit, leaving Splinter as the only remaining defendant.

## B. Adequacy of Claims

With Brehm, Kundert, and PDT having been dismissed due to lack of personal jurisdiction, the remaining question is whether Presidio has successfully stated a claim against Splinter. It has not done so. Though Presidio brings a laundry list of claims against Splinter, none of them are adequately alleged.

Starting with the claims for misappropriation of trade secrets, these can all be analyzed together because the standards under the DTSA (the federal statute), ITSA (the Illinois version), and WUTSA (the Wisconsin law) are all essentially the same. Under these statutes, Presidio must adequately allege that (1) Presidion had protectible trade secrets; (2) Splinter misappropriated that trade secret; and (3) she used the trade secret in her business or work. *Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604, 613 (N.D. Ill. 2023); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002).

Presidio identifies two things that Splinter did that allegedly constitute misappropriation of trade secrets. First, Presidio asserts that Splinter sent an email entitled "Presidio docs" to her personal email address. Compl. at 18–19. Presidio does not allege what in the email constituted a trade secret; instead, it just speculates that the email may have contained Presidio's proprietary information. *Id.* That is not a sufficiently concrete or plausible factual allegation to qualify the email and its attachments as trade secrets.[4]

---

[4]In reality, the defense says that this email merely contained a copy of Splinter's Netech confidentiality agreement and Presidio Employee Exit Guide. R. 70-1, Defs.' Resp. Br.,

12

Second, Presidio says that despite being told not do so, Splinter deleted 7,108 files from her work-issued laptop. Compl. ¶ 96. Presidio argues that this serves as circumstantial evidence that Splinter engaged in misappropriation and then covered it up. *Id.* ¶ 97. But inferring misappropriation from Splinter's file deletion is too big a leap. In support of the proposed inference, Presidio cites *Mickey's Linen v. Fischer*, 2017 WL 3970593 (N.D. Ill. Sept. 8, 2017). R. 27, Pls.' PI Mem. at 22. There, the district court inferred misappropriation because, among other evidence, the defendant "wiped all customer and other company information from his company-issued cell phone before returning it, rendering it impossible to determine whether that information was sent to anyone." *Id.* at *11. By contrast, here, Splinter moved the files in question to the recycle bin of her computer. *See* R. 36, Scatton Decl., Exh. B. So Presidio could still recover the deleted files, which means that the deletion did not destroy the files permanently and could not have meaningfully hindered Presidio's ability to close deals or keep its customers. And unlike in *Mickey's Linen*, because Presidio has access to Splinter's browsing history and data, it could determine whether Splinter sent out (or sent to herself) any of the deleted files. *See* Compl. ¶¶ 100–01. Despite having that information, the only documents or information that Presidio alleges that Splinter sent herself is the "Presidio docs" email (which apparently contained only her exit HR forms). *Id.*; Def.'s Resp. Br., Exh. A. Plus, out of the thousands of files that Splinter deleted, Presidio identifies only a few that were related to quotes and

---

Exh. A. These documents would not qualify as trade secrets; rather, they are routine HR exit documents that Splinter reasonably sent herself before leaving Presidio.

purchase orders for customers that were later pursued by PDT. Compl. ¶ 96. So there is simply not enough alleged to link the file deletion to any misappropriation of trade secrets. Thus, although it was suspicious for Splinter to delete the files after being told not do so, Presidio's allegations—even when viewed in the light most favorable to Presidio—do not allow for an inference of misappropriation. Presidio does not adequately state a claim for misappropriation of trade secrets.

Presidio's inability to establish that Splinter retained, sent to third parties, or otherwise misappropriated its confidential information also dooms its claims for breach of contract, tortious interference, and breach of fiduciary duty.[5] First, Presidio claims that Splinter breached her Netech confidentiality agreement by retaining and improperly using Presidio's proprietary information. Compl. ¶ 214. But again, the only relevant, specific allegations against Splinter are that she sent herself the "Presidio docs" email and deleted files from work laptop. *Id.* at 16–19. As explained above, the allegations are not concrete enough to give rise to an inference that Splinter retained or misused confidential information. And it is unreasonable to infer from Splinter's file deletion that she was covering up improper use of Presidio's

---

[5]The Defendants have conceded that the requirements for diversity jurisdiction, 28 U.S.C. § 1332(a), over the state law claims are satisfied, so even after dismissing the misappropriation claims, the Court retains jurisdiction over the remaining claims. That said, the Plaintiffs do not properly allege citizenship. They do not specify the states of citizenship of each of the Plaintiff-LLC members, and rather than allege the Defendants' citizenships (that is, the state of *domicile*), they allege the Defendants' states of residence. So to confirm that the Court does in fact have diversity jurisdiction over the state law claims, the Plaintiffs shall submit a status report, by April 7, 2025, setting forth the states of citizenship for each Plaintiff-LLC member, and the Defendants shall submit a status report listing their states of citizenship.

confidential information. So Presidio's allegations, even when viewed in the light most favorable to Presidio, do not establish that Splinter breached her confidentiality agreement and thus do not state a contract breach claim.

For largely the same reasons, Presidio also does not adequately state a claim for fiduciary duty. Presidio asserts that Splinter began to solicit customers for PDT while she was still working for Presidio; used Presidio's information to get a competitive advantage for PDT; and deleted files to stop Presidio from winning customers opportunities. Compl. at 48. But once more, the only specific actions that Presidio points to in support of these claims are the "Presidio docs" email and her deletion of files. *Id.* at 16–19. As explained above, neither of these actions shows or even leads to the inference that Splinter misused confidential information or otherwise improperly helped PDT to the detriment of Presidio. Presidio's allegations fail to adequately allege that Splinter violated her duty of loyalty to the company.

Finally, Presidio asserts that Splinter engaged in tortious interference by misappropriating its confidential information to help divert business to PDT. *Id.* at 45-46. This too fails. Again, it is unreasonable to infer that Splinter retained or misused Presidio's confidential information from just the deletion of emails and files before leaving the company. So Presidio does not properly allege that Splinter misappropriated confidential information or wrongfully diverted business to PDT. Presidio's tortious-interference claim against Splinter—like all of its other claims—is unsuccessful. Thus, the Rule 12(b)(6) motion to dismiss the claims against Splinter is granted.

### C. Preliminary Injunction

Presidio moves for a preliminary injunction against the Defendants, seeking to bar them from using any of Presidio's confidential or trade secret information. Pls.' Mot. for PI. But a party is entitled to a preliminary injunction only if it is likely to succeed on the merits of the case. *Doe v. Univ. of S. Indiana*, 43 F. 4th 784, 791 (7th Cir. 2022). As explained above, Presidio fails on personal jurisdiction as to Brehm, Kundert, and PDT, and fails to adequately state a claim against Splinter. Thus, Presidio's motion for a preliminary injunction is denied.

### IV. Conclusion

Paul Brehm, Steven Kundert, and PDT's motion to dismiss the claims against them for lack of personal jurisdiction, R. 68, is granted. Angela Splinter's motion to dismiss the claims against her for failure to adequately state a claim, R. 68, is also granted. Presidio's motion for a preliminary injunction, R. 25, is denied. The dismissal of the complaint against Splinter is without prejudice for now, given that Presidio has not yet had a chance to file an amended complaint. If Presidio wishes to proceed against Splinter, then Presidio may file an amended complaint by April 14, 2025. If no amended complaint has been filed by that deadline, then the dismissal will automatically convert to a dismissal with prejudice.

To confirm the Court's diversity jurisdiction over the state law claims, *see supra* at 14 n.5, by April 7, 2025, the Plaintiffs shall submit a status report containing the states of citizenship for each Plaintiff-LLC member, and the Defendants shall submit a status report listing their states of citizenship, not residency.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2025